McCulley *v.* Cherokee Amusement Co.

(*Knoxville*, September Term, 1944.)

Opinion filed December 2, 1944.

HARRY B. BROWN and TEMPLETON & TEMPLETON, of Jellico, and JOE M. CARDEN, of LaFollette, for plaintiff.

W. W. PIPER and CATES, SMITH & LONG, all of Knoxville, for defendant.

MR. JUSTICE NEIL delivered the opinion of the Court.

The plaintiff, by his next friend, brought suit in the Circuit Court of Campbell County against the defendant

for damages for personal injuries received while attempting to enter defendant's motion picture show through a hole in the wall of a small furnace room adjoining the main building. The declaration describes the hole in the wall of the furnace room as an opening "through which fresh air was forced from the outside into the inside of said theater building by the operation of an electric fan." The electric fan was a "large, heavy, mechanical device, apparently enclosed in a covering of sheet metal which extended over the top and both ends and partially around the sides." It was through this opening and in close proximity to the fan that young McCulley attempted to enter when he was injured, one trouser leg being caught in the blades of said electric fan, causing serious injury to his leg.

It is further alleged in the declaration that little boys, "actuated by strong desire to see the moving pictures, and having an opportunity to enter the opening in the rear wall, they constantly took advantage of it, with the knowledge of the defendant;" that the said defendant failed to close said opening to prevent any injury to young boys and especially the plaintiff. The plaintiff's right of action is based upon the theory that the defendant maintained an attractive nuisance, one which especially appealed to children, and that defendant failed and neglected to so guard this particular entrance to the theater, "the hole in the wall," and thus prevent any injury. It is thus stated in the following paragraph of the declaration:

"Plaintiff avers that under said circumstances and conditions it was the defendant's duty to prevent injuries to such little boys by said electric fan and by said dangerous conditions, and that, having converted its premises into an attractive show place, and having set

up on the rear of said premises a dangerous agency, and having attracted little boys to its premises by the nature of its business and by special invitation, with actual knowledge of their disposition and habit of slipping into the show by entrance at the rear, as aforesaid, and having thus exposed them to said dangers, it was the defendant's duty to anticipate that injury was likely to result to such little boys and to exercise reasonable care to prevent it, which plaintiff avers the defendant wholly and grossly, wilfully and wantonly, failed and neglected to do.''

At the conclusion of all the evidence the trial judge sustained a motion for peremptory instructions upon the grounds (1) that the attractive nuisance doctrine does not apply to the facts in the case, and (2) that plaintiff, though a minor, was guilty of proximate contributory negligence which barred his right to recovery. An appeal was prayed and granted to the Court of Appeals and the action of the trial court in dismissing plaintiff's case was assigned as error. That Court in a divided opinion reversed the lower court and remanded the case. We granted *certiorari* and the case has been regularly heard.

Before considering the assignments of error it is important to note certain undisputed facts. It appears that for a long time prior to the plaintiff's injury the manager of the defendant's theater had warned a large number of boys against gaining entrance to the building by using the hole in the furnace room; that when they thus entered they were ejected and not allowed to remain. The plaintiff had not prior to his injury gained entrance through this opening, but had full knowledge of the fact that other boys had been told that it was dangerous. He testified that he had heard the manager tell other boys it was dangerous to go through the furnace room. As to

the danger of being injured by the blades of the fan, he testified:

"Q. It was plain to see you might get hurt? A. I didn't know I would get hurt with the fan; I thought the fan belt might hurt me.

"Q. You knew you might get hurt by the blades of the fan? A. No, for I had not been in there."

It further appears from his testimony that other boys had told him it was easy to get in through the furnace room. Jimmie McCulley, the brother of the plaintiff, and who was sixteen years of age, gave the following testimony:

"Q. Did Mr. Sutton tell you why he wanted you to not come in that way? A. He told me it was dangerous and a trap for little boys. He said, "Stay out; you might get injured."

The assignments of error relate to the error of the trial court in directing a verdict upon the grounds heretofore mentioned, the Court of Appeals disagreeing and remanding the case. The questions are thus pointedly made on the record: (1) Does the attractive nuisance doctrine apply to the facts of the instant case, and (2) does the proximate contributory negligence of a minor ten years of age bar his right of action? The majority view of the Court of Appeals is that the instrumentality which caused the plaintiff's injury, while not in and of itself an attractive nuisance, was nevertheless so closely related to and connected with the picture show, which is admittedly attractive to everyone, that it must be considered a part of it. The doctrine of attractive nuisance is correctly stated in the majority opinion of the Court in the following language:

"The doctrine of attractive nuisance is based upon the theory that one who maintains upon his premises an

agency which is dangerous to children of tender years by reason of their inability to appreciate the danger, and which may reasonably be expected to attract children to the premises, is under a duty to exercise reasonable care to protect them against the dangers of the attraction.''

In support of the extension of the doctrine reference is made to 38 Am. Jur., Negligence, section 151, p. 818, wherein it is said:

''However, one important condition of the application of the doctrine of attractive nuisance is that the danger to the child be caused by the attraction itself, or by something with which the attraction brings the child in contact.''

■ While the doctrine has been recognized by this Court in a number of cases, it has been limited in its application. We have never gone so far as to hold that it is the duty of a property owner to guard and make reasonably safe all approaches to what might be properly characterized as an attractive nuisance. Liability for maintaining an attractive nuisance, in those jurisdictions where the doctrine is recognized, is based upon negligence or a failure to observe a legal duty. It does not rest upon humanitarian principles. The theory upon which liability is predicated, following the rule as laid down in the *Turntable Cases,* is clearly stated in 3 Cooley on Torts (4 Ed.), section 441, p. 202, as follows:

'' 'One who maintains upon his place, and permits to remain exposed, something dangerous when approached or used, and of such an attractive character that he knows, or, as a reasonably prudent man should know, will invite the attention of children and draw them to it, because of their sportive and playful natures, *impliedly invites them to come*; and in exposing such an instrumentality, with the

knowledge that it will attract children, he occupies the same position when they come as if he had beckoned to them and they followed.'" (Italics ours.)

The doctrine is repudiated in a number of jurisdictions, while in others it is not being extended or enlarged. It was so held by this Court in *Doyle* v. *City of Chattanooga*, 128 Tenn. 433, 161 S. W. 997, Ann. Cas. 1915C, 283; see also *Lucas* v. *Hammond*, 150 Miss. 369, 116 So. 536, 60 A. L. R. 1427, and annotations. For us to extend the doctrine as being applicable to the facts of the instant case would in our opinion lead to some absurd conclusions. The plaintiff when injured was attempting to break into the defendant's picture show. His right of action certainly cannot find support upon any theory of implied invitation by the defendant, since the latter had given timely warning for him to stay out. There are many things that are tempting to children that are not an attractive nuisance. It is a matter of common knowledge that ripe apples in an orchard and watermelons are attempting to both children and adults, but it will not be insisted that the owner must guard his orchard against unlawful entry or intrusion. A picture show is an attractive thing to everyone, but it is far from being an attractive nuisance as defined by the authorities. We know of no case holding that, where children are attempting to invade the premises of another and have been warned to stay out, the owner is negligent in failing to place a secure fence around it or make his building absolutely secure against intrusion. In *Carr* v. *Oregon-Washington R. & Nav. Co.*, 123 Or. 259, 261 P. 899, 902, 60 A. L. R. 1434, 1439, the Court, in responding to a situation similar to the one now before us, said, "Does the new rule go still further, and make it necessary for a man to fence his gravel pit or quarry? And, if so, will an ordinary fence do, in view of

the known propensity and ability of boys to climb fences?''

The plaintiff in the instant case was not in any sense an invitee. We recognize the rule of law which renders liable an owner of land, in certain circumstances, to trespassers, but it has no application here. Conceding the plaintiff to be a licensee, the defendant is under no legal obligation to arrange his property to safeguard a licensee, his only duty being to give timely warning of danger and to do no act that might result in a wilful injury. *Westborne Coal Co.* v. *Willoughby*, 133 Tenn. 257, 180 S. W. 322. Moreover, the rule of law governing the right of action of a licensee has no application to the admitted facts of the instant case.

We have held in a number of cases that an owner of a private property, upon which there is a pool of water and to which boys are attracted, will not be liable for the death of one who is drowned therein. *Cooper* v. *Overton*, 102 Tenn. 211, 52 S. W. 183, 45 L. R. A. 591, 73 Am. St. Rep. 864. See also *Benson* v. *Howard-Park Brick Co.*, 6 Tenn. Civ. App. 497. In *Doyle* v. *City of Chattanooga*, *supra*, the defendant was held liable for maintaining a dangerous pond adjacent to a public park and street in which a youth was drowned, on the ground that it was an attractive nuisance. In this case it was said (page 444 of 128 Tenn., page 999 of 161 S. W., Ann. Cas. 1915C, 283):

"In the case at bar, the attractive object was in a place (within the limits of a public street) *where a child had a right to go, on invitation such as is impliedly given to the public at large.* A trespass could not be imputed to an approach to or use of such a public street." (Italics ours.)

█ The case is in no way analogous to the one now before us. In the instant case the plaintiff is considered to be a trespasser. He was invading the private property of the defendant. He had no right to be in the furnace room where the injury occurred; he had been repeatedly warned to stay out, and had knowledge of the fact that any attempt by him to enter the theater over the fan was dangerous. It would be not only unwise, but contrary to sound legal principles, to extend the doctrine of attractive nuisance so as to protect juvenile delinquents in doing what is known to be wrong and which they also know to be fraught with danger, and thereby compel property owners to guard their property against every unlawful intrusion.

Holding, as we do, that the attractive nuisance doctrine is not applicable, it is unnecessary that we consider the second assignment of error relating to the contributory negligence of the plaintiff as a bar to his right of action.

The judgment of the Court of Appeals is reversed and that of the trial court affirmed.