# GATLINBURG CONST. CO. v. McKINNEY.

# GATLINBURG CONST. CO. v. BALES.—263 S. W. (2d) 765.

Eastern Section. July 27, 1953.

Petition for Certiorari denied by Supreme Court, December 11, 1953.

344

Poore, Cox, Baker & McAuley and A. D. Byrne, all of Knoxville, for plaintiff in error.

Hodges & Doughty, of Knoxville, and Townsend & Hailey, of Sevierville, for defendants in error.

McAMIS, P. J.   William Charles McKinney, a minor suing by next friend, and his mother, Mrs. Mildred McKinney Bales, sued to recover for personal injuries and medical bills resulting from the explosion of a tank used to store gasoline or diesel oil on a lot leased by defendant Gatlinburg Construction Company.   The two cases were tried together before the Court without a jury and resulted in judgments for $3,250 in favor of the minor plaintiff and $750 in favor of Mrs. Bales.  Defendant has appealed from both judgments.

Several years prior to April 12, 1952, the date of the explosion, defendant leased a lot adjoining plaintiff's home and within a thickly populated section in the City of

Gatlinburg for the purpose of storing thereon its tools, old machinery, tanks and other equipment. Having the exclusive possession of the lot, defendant continued to use it for such purposes until the date of the accident. Two years or more prior to the accident, it uncovered a tank previously placed underground by the gas and oil distributor from which it had purchased petroleum products. In removing the tank the bulldozer punched a small hole near the bottom and it was pushed to one side of the lot. The distributor was notified but failed to remove it and the tank remained in this position for a period of two years or more without being steamed out or filled with earth or sand and with its two vents uncapped.

The theories of the declaration are that the lot became a playground for children requiring defendant to take reasonable precautions for their safety and that, under the circumstances, the doctrine of attractive nuisance applies.

The proof shows that practically all of the children of the neighborhood from five to twelve years of age had been playing on the lot for two or three years prior to the accident using an old rock crusher, old cars and trucks and the tank in question for such purposes as only a childish imagination can invent. The tank, provided with a tail of rags protruding from one of the vents, became Silver, a horse of comic book fame. A basketball hoop or court was installed for the use of the older children.

No fences, signs or warnings were provided although defendant's president, testifying as a witness in its behalf, admitted that he knew there was a basketball court on the lot. We infer that employees of defendant went upon the lot frequently in connection with their duties. They were not called as witnesses.

On the day of his injury, plaintiff, aged 8 years, and another boy of about the same age had gone on the lot to

play on the tank. Plaintiff had been told by another boy that there was water in the tank and, having come into possession of a match found just across the line on adjoining premises, he decided to drop it through the vent of the tank to see whether it would burn or go out. When he did so, an explosion occurred causing the injuries hereinafter described.

██ It is unnecessary to decide whether, under the facts, the attractive nuisance doctrine can properly be applied. The playground theory, enunciated in Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607, is clearly applicable. The basis of such liability, as there defined, 32 Tenn. App. at page 287, 222 S. W. (2d) 607, is that if an owner of land knows that children of tender years habitually play upon his land to the extent that it becomes known as a playground for children, he is bound to exercise ordinary care to see that his premises are reasonably safe for the purpose and is duty bound not to permit them to be exposed to a known danger. See also 65 C. J. S., Negligence, Sec. 40, p. 505; Ann. 8 A. L. R. (2d) 1285; Restatement of Torts, Section 339.

██ Refinements of the rule set forth in these authorities limit its application to situations where the landowner knows or, by the exercise of reasonable care, should know that children of immature years are habitually trespassing upon his land to use it as a playground, under conditions other than natural, which the landowner knows or should know involve an unreasonable risk of bodily injury and which children because of their youth will fail to discover and appreciate. To bring property within the rule its use as a playground must be generally known in the immediate vicinity and not be merely occasional or intermittent.

■ We think factors to be considered in determining liability under the rule include the slight value and utility to be derived by the owner in maintaining the condition or the small cost of removing the danger, as compared to the likelihood and seriousness of injury to young children, and the presence or absence of guards, fences and warnings.

■■ In the present case it is clear that defendant knew or had good reason to know that children were making a playground of its lot. As stated, its president admits that he knew there was a basketball court on the lot. This was at least sufficient to put defendant on inquiry and this is notice of all the facts to which inquiry prosecuted with reasonable diligence would have led. Texas Co. v. Aycock, 190 Tenn. 16, 227 S. W. (2d) 41, 17 A. L. R. (2d) 322. One fact which would have been discovered was that young children of the neighborhood were playing around the machinery and on the tank and that this was being done habitually. Defendant's employees went upon the lot in the course of their duties, and, in view of the length of time the use had continued, it is difficult to believe that actual knowledge had not been brought home to it. Defendant had actual knowledge that the tank had been left unsteamed and unfilled because its employees had dug it out of the ground and left it abandoned on the lot.

■■ It is common knowledge that, as shown by the proof, the residue left in tanks used to store petroleum products is explosive. The cost of capping, removing or filling the tank would have been inconsequential compared to the obvious danger of serious injury to children too young to appreciate the danger who were constantly playing upon the lot. Notwithstanding, defendant offered

no obstruction to free access to its lot and gave no warning of the danger.

We think under all the circumstances defendant was negligent and that its negligence was the proximate cause of the injuries sustained. We cannot agree that the chain of causation was broken by the act of the boy in throwing a match into the tank. The negligence of defendant was not in leaving the tank on the lot. It had a right to do that. Its negligence consisted in failing to take measures to protect children known to congregate without objection upon its lot. It could have done this by forbidding the use of the lot or by removing the tank or at small expense rendering it innocuous. If the act of a child which might have been anticipated could break the chain of causation but seldom could there be a recovery in cases of this kind.

We do not think the mother of the child was guilty of contributory negligence. She knew that he was playing on the lot but did not know he was exposed to the danger of an exploding tank. As to contributory negligence of the injured boy himself, the presumption is that, being less than 14 years of age, he was incapable of protecting himself. Ballow v. Postal Tel. Cable Co., 12 Tenn. App. 348. While the proof shows that he had some appreciation of the danger of matches and of gasoline we do not think he had sufficient appreciation of the danger of throwing a match into a tank which he thought contained water to overcome the presumption of incapacity and bar recovery.

We do not find the judgment for $3,250 for personal injuries excessive. The injuries consisted of first, second and third degree burns centering around the right eye which was completely closed for a time. Plain-

tiff received first aid treatment in Sevierville and was then removed to a hospital in Knoxville where he was treated by a specialist. His temperature rose to 105 degrees and his condition was considered serious for a short time. He will have some facial disfigurement in the form of black spots resembling freckles but only on one side of his face. These, presumably, will be permanent. Doubtless, his injuries caused rather severe pain.

As to the judgment for $750, though sued for, we find nothing to sustain an award for loss of services since no permanent disability resulted. Expenses of treatment including hospital and doctor's bills amount to only $150. No other expense is shown. The judgment is excessive to the extent of $550. The addition of $50 to the medical bills should compensate for such minor items as going to Knoxville to see her son, etc. Judgment for $200 with interest will be rendered here. Judgment for $3,250 with interest will be rendered here in the case of William Charles McKinney, by next friend. Costs, including costs of appeal will be taxed to defendant and surety.

Hale and Howard, JJ., concur.