GRACE T. RUSSELL, Adm'x of Paul Thomas Russell, Plaintiff-in-Error, v. CITY OF CHATTANOOGA, Defendant-in-Error.

and

GRACE T. RUSSELL, Adm'x of William Donald Russell, Plaintiff-in-Error, v. CITY OF CHATTANOOGA, Defendant-in-Error.—279 S. W. (2d) 270.

Western Section at Knoxville. August 13, 1954.

Petition for Certiorari denied by Supreme Court, November 16, 1954.

Atchley & Atchley, of Chattanooga, for plaintiff in error.

J. W. Anderson and E. K. Meacham, both of Chattanooga, for defendant in error.

CARNEY, J.   These two suits arose out of the death by drowning of William Donald Russell, aged 9, and his brother, Paul Thomas Russell, aged 10, in a deep, long trench dug by the defendant, City of Chattanooga, for the purpose of disposing of city garbage.  At the conclusion of plaintiff's proof, upon motion, a directed verdict in favor of the defendant was granted by the Trial Court in each case.

The first question presented to this Court is the motion by defendant, City of Chattanoooga, to strike the Bill of Exceptions because it does not affirmatively recite that the Bill of Exceptions contains all of the evidence presented in the case.

■ We think the record clearly shows that there was no controversy of fact in the Court below, and the Trial Judge decided that as a matter of law the evidence submitted by plaintiff was insufficient to go to the jury and directed verdicts were granted in favor of the defendant at the close of plaintiff's proof. Under the authority of Harlow v. State, 159 Tenn. 537, 20 S. W. (2d) 1045, approved in Buchanan v. State, 177 Tenn. 140, 146 S. W. (2d) 953, we will review plaintiff's evidence contained in the Bill of Exceptions to ascertain whether such evidence was sufficient as a matter of law to make out a prima facie case of liability against the defendant, City of Chattanooga. Accordingly, the motion to strike the Bill of Exceptions is overruled.

Turning now to plaintiff's evidence as shown by the Bill of Exceptions, it appears that on April 7, 1952, the deceased, William Donald Russell, then 9 years of age, was playing with other children in an area where the defendant, City of Chattanooga, had maintained a garbage and city dump and had dug several large and deep trenches for garbage disposal, and the deceased in some manner slipped or slid down the steep bank of one of these trenches and was drowned in water some four to six feet deep, which had accumulated in said trenches from the winter rains.

The older brother, Paul Thomas Russell, aged 10, who was playing some distance away, saw or heard him slide into the water and very heroically jumped into the water in an effort to save his brother, and both of them were drowned late in the afternoon of the same day.

The tract of land on which the pool of water had accumulated had been bought by the City of Chattanooga a few months before these two boys drowned, and the

northern portion of the same was being converted into a garbage area.

In the winter of 1951 the City had dug deep, long trenches with earth-moving machinery and piled the dirt into high banks on each side of the deep trenches. Openings were left in the banks of dirt at spaces along the ditch to permit garbage trucks to back in and dump the garbage into the trench, which garbage was from time to time to be covered with a layer of dirt, then another layer of garbage and a layer of dirt, until the trench would finally be filled in with garbage and dirt. This method of garbage disposal is known as the ''Sanitary Fill'' method and is in use in a number of cities throughout the country. In time the garbage decomposes and becomes earth, and over a period of years the area will have been raised several feet by the addition and decomposition of the garbage material.

Plaintiff's proof shows further that children had been accustomed to playing in the garbage area in large numbers each afternoon after school; that some of the boys had been swimming in some of the trenches which were in the same area; that the City police had been called to disperse the children swimming in the trenches; that the children were accustomed not only to playing baseball and flying model airplanes in the area but to ride bicycles along the top of some of the high banks which were made by piling the fresh dirt around the trenches; that the children were accustomed also to walk in and around the piles of garbage to pick up funny books, broken or discarded toys and other elements of salvage; that the City had employees working in and about the garbage in the area on the day of the drowning; that the banks of the trenches were so steep and so high that a person falling

or sliding into the water would have no way to pull himself out of the same.

Plaintiff's proof further indicates that though the trenches had been dug sometime in the Winter of 1951, the City had started dumping garbage in the particular trench in which the boys drowned only on the day of April 7, 1952.

The City had never put up any fences around the area, had no guards or watchmen, and had made no effort to prevent the children from playing in the area, picking up salvage among the garbage, or from playing on the high banks of dirt around the edge of the trenches. The only objection which the City had made to children playing in the area, according to plaintiff's proof, was the one time the City Police were called and told the older boys to stop swimming in one of the other trenches.

■ Under the authority of City of Nashville v. Mason, 137 Tenn. 169, 192 S. W. 915, L. R. A. 1917D, 914, and Boyd v. City of Knoxville, 171 Tenn. 401, 104 S. W. (2d) 419, we hold that the collection and disposition of garbage by a city are governmental functions, and the City is not liable for the negligence of its officers, employees and servants unless the City should, in the discharge of said governmental functions, create a nuisance which is the direct and proximate cause of the injuries sued for by the plaintiff.

Therefore, the ultimate question for decision in these cases on this appeal is whether the City, in disposing of its garbage, created and maintained a nuisance which was the direct and proximate cause of the death of these two boys.

In Benson v. Howard Park Brick Co., 1916, 6 Tenn. Civ. App. 497, the Court of Civil Appeals of Tennessee held

the defendant, Brick Company, a private corporation, not liable for the death of an eleven-year-old boy by drowning in a pond several feet deep, located on the premises of defendant, Brick Company. The pond was formed by excavation of dirt or clay to make brick, and the excavation was later filled by backwater from the Tennessee River. Boys had been accustomed to visit the pond for several years to swim, bathe and fish, without objection by the owner of the premises.

In City of Memphis v. Trice, 1931, 13 Tenn. App. 607, the Court held that the City was not liable for the death by drowning of a seven-year-old boy who slipped into a water hole created by the City of Memphis in making a fill and building a retaining wall along one of the city streets. Children had been accustomed to playing in the neighborhood around the hole and throwing rocks over the wall into the hole below. The banks around the water hole were sharp and precipitous and no guard rail or warning was used to prevent people from falling into the hole. On the day in question three small boys were playing in the vicinity of this water hole and the deceased slipped and fell and slid down the bank into the water hole, where he was drowned. The Court held that the condition thus created by the City did not create an attractive nuisance within the meaning of the rule and denied liability.

The principal case relied upon by plaintiff-in-error is Doyle v. City of Chattanooga, 128 Tenn. 433, 161 S. W. 997. In that case the City was held liable for the death by drowning of two boys, aged 11 and 9, in a pond. However, the pond was located in a public street as distinguished from the cases at Bar where the pond or trench was dug on property removed from the street and in the course of carrying out the City's garbage disposal plan.

Further, it has been held that the maintenance of city streets is a proprietary function and not a governmental function. Sheperd v. City of Chattanooga, 168 Tenn. 153, 76 S. W. (2d) 322.

In Williams v. Town of Morristown, 32 Tenn. App. 274, 222 S. W. (2d) 607, the City was held liable for the drowning of two persons on the theory that the lake or pond was maintained by the City in its proprietary capacity and upon the playground theory.

In the recent case of Upton v. City of Chattanooga, unreported, in the Court of Appeals at Knoxville, filed January 26, 1953, this Court held that the defendant, City, was not liable for the death by drowning of a child three years old in a park lake maintained by the City which had no effective guard rails or fences and where no lifeguard was maintained and where children were accustomed to go and see and feed the wild fowl swimming on the lake.

A careful analysis of the condition as actually created by the City in these cases at Bar does not reveal any inherently dangerous condition. The trenches were considerably removed from the public thoroughfare and were inaccessible due to the piling of loose dirt around the edges. The particular trench in which the two boys drowned was not attractive in and of itself because the proof shows that it was filled with water, debris, floating tin cans and decomposing garbage which gave off a very offensive odor. Even though the children did play baseball on the undug portion of the area, yet the proof shows that the trench in which the boys drowned was not a part of the ball diamond or playing field. To have prevented these drownings, the City would have had to maintain a watchman or guard on duty at all times, or would have

had to erect a child-tight fence around the trench, or would have had to keep the water drained from the ditches. To require this of the City would work an unreasonable expense, burden, and inconvenience on the City in carrying out its governmental function of garbage disposal.

It would unduly prolong this opinion to review, discuss and distinguish the many cases decided in the United States on factual situations similar to the case at Bar. From a consideration of those cases and a review of the evidence mentioned above, we hold that the City did not create a nuisance, attractive or otherwise, in digging these trenches and permitting them to collect water in furtherance of their "Sanitary Fill" method of garbage disposal, which we have held to be a governmental function.

Therefore, we hold that the undisputed facts as proven by the plaintiff did not make out a prima facie case of liability against the City, and the Trial Judge did not err in granting motions for directed verdicts. All Assignments of Error must be overruled, and a judgment will be entered dismissing the appeals-in-error and affirming the judgment of the Court below in each case.

The costs of this appeal are taxed against the plaintiff-in-error in each case.

Avery, J., concurs.