DOMINGA TORRES, ETC., Plaintiff and Appellant, *v.* WIRSHING & CO., S. EN C., and U. S. FIDELITY & GUARANTY CO., Defendants and Appellees.

No. 11384. Argued February 1, 1955.—Decided September 6, 1955.

*Rafael Muñoz Ramos* and *Inés Acevedo de Campos* for appellant. *Enrique Báez García* for appellees.

MR. CHIEF JUSTICE SNYDER delivered the opinion of the Court.

Dominga Torres, assisted by her husband, Tomás Santana, filed suit against Wirshing & Co. S. en C., and U. S. Fidelity and Guaranty Co. in the Superior Court for damages by virtue of the death of Inés Laboy Torres, the

daughter of Dominga Torres and step-child of Tomás Santana. After a trial on the merits, the Superior Court entered a judgment in favor of the defendants, from which the plaintiff appealed.

There is no dispute as to the facts. At the time of the accident, Wirshing & Co. operated sugar cane farms known as Colonia Restaurada on which various houses for its employees were located. The plaintiff lived in one of these houses with her children, including Inés.

At about 2.30 p. m. on June 11, 1951 Heriberto Ortiz, employed by Wirshing and Co. to cut fodder and haul it by oxcart to a corral where the oxen were kept on its property, unyoked the oxen and left the empty cart standing in its customary place outside the corral. The oxcart has two wheels and a long tongue. At the end of the tongue there is a yoke which fits on the head of the oxen. In order to rest the latter when the cart is not in motion, a pole is let down to the ground. The weight of the load in the cart is supported by this pole which is attached to the tongue by a revolving ring. The pole is called "el niño". When the cart is used, the "niño" is hauled up into its place by a short length of rope.

Ortiz testified that he was ordered by his employer always to rest the tongue of the cart on the ground when he unyoked the oxen, and that he had done so on the day of the accident. However, the Superior Court found that on the day in question the cart was in its customary place with the tongue propped up in a horizontal position, supported by the "niño".[1] Since the cart contained no load at that time, there was no weight to press the "niño" firmly to the ground.

---

[1] For reasons hereinafter noted, we assume that Ortiz left the tongue propped up in this manner instead of resting on the ground. The only purpose of so leaving it would be to make it easier for Ortiz on the following morning to yoke the oxen to the cart without having to bother to lift up the tongue. The testimony was that it was too heavy for a child—but not for a man—to lift. In any event, as already noted, we assume that Ortiz left the tongue propped up in a horizontal position.

The cart was near a community water faucet which was used by the employees of Wirshing and Co. who lived in the houses located within Colonia Restaurada. At about 4:00 or 5:00 P. M. on the day of the accident Inés, who was 11 years and two months old, went to the faucet with a bucket to get some water. She was accompanied by three friends, who were about 11 or 12 years of age. While they were at the faucet, Inés challenged the others to a race to see who could reach the cart first. After they lined up, Inés started to run before the signal was given. The accident occurred after Inés reached the cart. The testimony as to exactly how it occurred is not so clear as it might be. However, neither party challenges the finding of the trial court that when Inés reached the cart, ". . . she leaned on it, and the pressure of her body on the tongue caused the 'niño' to fall, she fell under the tongue, which fractured her skull, as a result of which she died the same day."[2]

The plaintiff contends that the trial court erred in finding that the oxcart was not an attractive nuisance and that the accident was not due to the negligence of the defendant employer.

 The trial court found that the children living within Colonia Restaurada were accustomed to getting into these oxcarts and to play in them. If, as we have assumed, Ortiz left the cart with the tongue propped up in a horizontal position and supported by the "niño", a child jumping and playing inside the cart might be unaware of the danger and be injured. Under these circumstances, the defendants

---

[2] The only testimony as to how the accident occurred was given by Gladys Esther Torres, 12 years of age, who accompanied Inés to the faucet. She stated that ". . . when she pushed against the cart, the 'niño' fell, she fell on the other side . . . and the 'niño' fell on her."

This is quite different from the allegation of the complaint that Inés might have used the tongue as a trapeze. And, as noted in the opinion, the accident occurred in a manner which had no relation to the danger involved in the custom of the children to jump and play inside the cart with the tongue in a propped-up position.

would perhaps be liable under the doctrine of attractive nuisance. *Díaz* v. *Central Lafayette*, 66 P.R.R. 780, and cases cited; *Restatement*, Torts, § 339. However, the accident did not occur here because children were jumping in a cart which was potentially dangerous for that purpose by virtue of its instability. The cart was merely the goal for a foot race. As such a goal, it had no attraction for children which had any relation to its potential danger. Even if we assume that the cart was an attractive nuisance involving a potential danger to children as tempting them to jump and play inside the cart, we cannot extend this doctrine to apply to the unrelated fact of using the cart as a goal for a foot race followed by an accident which is not shown to have occurred because of the dangerously attractive feature of the cart. See *Bonilla* v. *Loíza Sugar Co.*, 67 P.R.R. 359, 362.

The result we have reached makes it unnecessary for us to determine whether we would adopt "the playground rule" in this jurisdiction. *Cf. Gatlinburg Const. Co.* v. *McKinney*, 263 S.W. 2d 765 (Tenn., 1953) ; *Williams* v. *Town of Morristown*, 222 S.W. 2d 607 (Tenn., 1949) ; *Hogan* v. *Etna Concrete Block Co.*, 188 Atl. 763 (Pa., 1937) ; *Fitzpatrick* v. *Penfield*, 109 Atl. 653 (Pa., 1920) ; *McGill* v. *United States*, 200 F. 2d 873 (C. A. 3, 1953) ; James, *Inroads on Old Tort Concepts*, 14 NACCA L. J. 226, 229–230; 14 *id.* 285; 65 C.J.S. § 40, pp. 505–7.

Once the issue of attractive nuisance is eliminated from the case, we fail to find any act of negligence attributable to the defendant employer on which a judgment for the plaintiff could be based.

The judgment of the Superior Court will be affirmed.

Mr. Justice Negrón Fernández and Mr. Justice Belaval dissented.