ERNEST BIRDSONG, Adm'r of the Estate of
ERNEST BIRDSONG, JR., Plaintiff in Error,

*v.*

CITY OF CHATTANOOGA et al., Defendants in Error.

(*Knoxville,* September Term, 1958.)

Opinion filed December 12, 1958.

MASSEY, STONE & KIRKLAND, Chattanooga, for plaintiff in error.

ELLIS K. MEACHAM, Chattanooga, for City of Chattanooga.

ROBERTS & WEILL, Chattanooga, for Stein Const. Co.

JAMES H. ANDERSON, Chattanooga, for The Central of Georgia Railway.

266

Mr. Justice Swepston delivered the opinion of the Court.

This action was filed to recover for the death by drowning of a 7-year old boy, to which declaration the City of Chattanooga, the Central of Georgia Railway and the Stein Construction Company, a partnership, demurred. The demurrers were sustained and the appeal is direct to this Court.

The material parts of the declaration will be stated either in substance or verbatim. The said railroad company has a track running into the corporate boundaries of the City of Chattanooga and more particularly does said defendant have a strip of track running near Taft Avenue and Burnett Street in the southwestern section of the city. Sometime prior to February 17, 1957, the date when this child was drowned, said Construction Company, operating under a contract with said Railway Company was in the process of filling in "an area lying in a westwardly direction from the intersection of Taft Avenue and Burnett Street." The City of Chattanooga retained the right to direct the line and grade of said filling project so that the completed product would meet certain required specifications of said city and that said city through its employees and agents from time to time did direct and supervise the grading, filling and ditching of this area. As the work progressed "the embankment

or fill gradually rose to a considerable height and in apparent anticipation of draining the area, a wide, open ditch was suffered to remain about in the center of said fill, said ditch running in a northwardly and southwardly direction. That from either side of the fill were steep embankments of fresh dumped dirt or clay through which water of considerable depth was permitted to flow'', and on said date was of sufficient depth to drown said child.

It is alleged that said situation was dangerous and that each of the defendants was guilty of negligence as follows:

''1. This project was being conducted immediately adjacent to a thickly populated residential area where there were many young children of various ages whom each of the defendants knew or could and should have known by the exercise of ordinary care *would be likely to play upon and around a project* such as this, yet, the defendants made no effort to erect any sort of barricade across the same even though the defendants knew or should and could have known that people living in this area and especially the children *crossed this area* going from one community to the other nor did the defendants make any effort to make the banks of said ditch secure whereby one walking along said banks would not slip or fall into said ditch, nor did the defendants post any warning signs of any nature, nor did they keep any personnel on duty in the immediate area to advise any one in said area of the dangerous condition of the banks of this ditch or the depth of same, nor did the defendants place any handholds or stakes or steps or planks or any other articles to insure the safety of persons trying to cross said ditch, but suffered and permitted the same to remain an *open invitation* for any child or children playing in the area

to climb up and down the bank with the likelihood of slipping into the water as happened in this case.

"Plaintiff says that on February 17, 1957, that his intestate, Ernest Birdsong, Jr., a male child 7 years of age was *attempting to cross the ditch* herein described and while in doing so the bank of said ditch gave way and plaintiff's intestate was caused to slip and fall into the muddy dirty water running through this ditch of such a depth where he could not recover himself and thereupon plaintiff's intestate did suffer death by drowning in said ditch and was pronounced dead upon arrival at a local hospital."

The second count avers "that in the area immediately adjacent to the filling and grading project being conducted by the defendant herein described that there are hundreds of young children of tender years which fact was known by each of defendants or could have been known by said defendants by the exercise of reasonable care and plaintiff avers that such a project is one that has a *natural attraction* for young children but that because of the dangerous properties (sic) of such a project that the same became a nuisance. Plaintiff avers that the natural curiosity of any child would be attracted to such a grading and ditch project and plaintiff avers that Ernest Birdsong, Jr., being a young child of natural curiosity *was attracted* to said project and plaintiff thus invokes in this count of his declaration the doctrine of attractive nuisance * * *."

The Railway Company and the Construction Company each demurred (1) that the declaration is insufficient to show the existence of an attractive nuisance, and (2) it

does not allege any facts showing that this defendant breached any duty owing to the plaintiff.

The City demurred on the grounds:

(1) That the declaration fails to allege any state of facts upon which relief could be granted.

(2) It shows on its face that the place where the accident occurred was on private property west of the intersection of Taft Avenue and Burnett Street not owned or controlled by the city.

(3) The planning or fixing of the grade of a street is a public or governmental function for the exercise of which a municipal corporation is not liable. No allegations are made showing that the fixing of a street grade was in any degree the proximate or remote cause of this accident.

(4) A pond, lake or stream is not an attractive nuisance under the law of this state.

Thus it appears that plaintiff relies upon (1) common law negligence, (2) attractive nuisance, (3) playground doctrine.

■■ To sustain the common law negligence theory, plaintiff cites *Harrison v. Southern Ry. Co.*, 31 Tenn.App. 377, 215 S.W.2d 31. That was a case where the Southern Railway Company had permitted a coal company to dig a pit under a sidetrack for their convenience in unloading coal. People generally, and the plaintiff included, were accustomed to use from time to time this sidetrack as a convenient way or path. Without any notice to the public or to the plaintiff, the coal company was permitted to change the physical situation by digging a pit under another part of the track, into which plaintiff fell while he

was walking along this path at nighttime. On page 385 of 31 Tenn.App., on page 34, of 215 S.W.2d the opinion states:

"We think the rule may be stated that an owner or occupant who, after having acquiesced for a long period of time in the use by the public of a way across his premises, obstructs the way, excavates therein, or otherwise renders it defective, without providing guards or barriers properly to protect persons using the way or without giving warning of its changed condition, is liable to one who, in using the way without notice of its changed condition, is injured as a consequence of its defective condition. *Westborn Coal Co. v. Willoughby,* 133 Tenn. 257, 180 S.W. 322; 38 Am.Jur. (Neligence), Sec. 107, p. 770; *Douglas v. Bergland,* 216 Mich. 380, 185 N.W. 819, 20 A.L.R. 202; 44 Am.Jur. (Railroads) Sec. 425, p. 643."

That case is inapplicable to the present situation averred in the declaration.

Reference to the Michigan case above cited which appears beginning with page 380 of 216 Mich., page 819 of 185 N.W., page 197 of 20 A.L.R., will disclose that that rule applies only where there is a well established, well defined way or ways or path, but does not apply where people simply roam across and about an area of land in any and all directions haphazardly. That opinion referring to the Tabina case [*Habina v. Twin City General Electric Co.,* 150 Mich. 41, 113 N.W. 586, 13 L.R.A., N.S., 1126] therein cited, states:

"In that case a child had been injured; but, unlike this case, it did not appear that any path or way was shown to have existed at or over the land where the

ditch in which the child was injured was opened. In that case it was distinctly found that it did not appear that the plaintiff ever traveled over the premises in a path or way in a direction used by anyone else, or that she twice pursued the same way herself, but that she and others had been in the habit of roaming over the entire premises.'' [185 N.W. 821]

There was no liability.

The statement of the general rule beginning on page 202 of said 20 A.L.R. is to the same effect.

Reference to the other case cited, i. e., *Westborne Coal Co. v. Willoughby,* 133 Tenn. at page 266, 180 S.W. at page 325, which cites *Williams v. City of Nashville,* 106 Tenn. 533, 63 S.W. 231, shows that the rule of liability quoted from the Harrison case, *supra,* is predicated on there being a definite and well established path or way because that was the fact in the Williams case, although in the Williams case there happened to be more than one passageway or road; nevertheless they were definitely established ways.

Otherwise, the general rule applies as stated on page 266, of 133 Tenn., on page 325 of 180 S.W. of the Westborne Coal Co. case, *supra,* that ''there is no duty to licensees incumbent on a landowner over whose property such persons have been accustomed to go along a path or otherwise to so arrange the property as to safeguard them, even though there should be dangerous holes or pitfalls near the path. *Williams v. [City of] Nashville [supra].*''

Insofar as people generally are concerned in the instant case, apart from attractive nuisance or playground

theories, they were at best mere licensees just as were those boys in the case of *City of Memphis v. Trice,* 13 Tenn.App. 607. In that case the trial court directed a verdict as to both the property owner and the city on the common law negligence count; there was no question of any established path involved. The action of the trial court was affirmed on appeal. We will refer to that case hereinafter.

██ We are further of opinion that the playground theory is not supported by the declaration. In order for same to be applicable is not sufficient that the owner of land ought in the exercise of ordinary care know that children are playing on the ground; he must have actual knowledge that children *have in fact been using the property for a playground,* whereas in the doctrine of attractive nuisance, if the instrumentality is in fact attractive and dangerous, the property owner may be charged with knowledge. This distinction is made in *Gatlinburg Const. Co. v. McKinney,* 37 Tenn.App. 343, 348, 263 S.W.2d 765, citing *Williams v. Town of Morristown,* 32 Tenn.App. 274, 287, 222 S.W.2d 607.

██ This leaves only the attractive nuisance theory and in support of same, plaintiff relies on *Doyle v. City of Chattanooga,* 128 Tenn. 433, 161 S.W. 997. That case is not appropriate for the reasons stated on page 444 of 128 Tenn., on page 999 of 161 S.W. as follows:

> "In the case at bar, the attractive object was in a place (within the limits of a public street) where a child had a right to go, on invitation such as is impliedly given to the public at large. A trespass could not be imputed to an approach to or use of such a public street."

The declaration in the instant case does not aver that this work was being done in the city streets but by fair inference, it was being done on property either, belonging to the Railway Company or under its control.

In *McCulley v. Cherokee Amusement Company,* 182 Tenn. 68, 75, 184 S.W.2d 170, 172, our present Chief Justice made two appropriate statements. First, he said:

"Conceding the plaintiff to be a licensee, the defendant is under no legal obligation to arrange his property to safeguard a licensee, his only duty being to give timely warning of danger and to do no act that might result in a wilful injury. *Westborne Coal Co. v. Willoughby,* 133 Tenn. 257, 180 S. W. 322."

Secondly, it was stated:

"We have held in a number of cases that an owner of a private property, upon which there is a pool of water and to which boys are attracted, will not be liable for the death of one who is drowned therein. *Cooper v. Overton,* 102 Tenn. 211, 52 S.W. 183, 45 L.R.A. 591, 73 Am.St.Rep. 864."

Then in *City of Memphis v. Trice, supra,* the doctrine was thoroughly examined by Heiskell, J., in another pond case and there was no liability.

Then in *Ray v. Hutchison,* 17 Tenn.App. 477, 485, 68 S.W.2d 948, opinion by Faw, J., the doctrine was thoroughly briefed insofar as Tennessee is concerned. The question was again dealt with in *Russell v. City of Chattanooga,* 38 Tenn.App. 670, 279 S.W.2d 270. There is nothing in *Gatlinburg Const. Co. v. McKinney, supra,* to take the present case out of the rule that has been laid down with

reference to ponds; that was a playground case just as was *Williams v. Town of Morristown* which is cited in the Russell case, *supra*.

■ We are of opinion, therefore, that this declaration does not state a cause of action on any of the three theories urged; there the demurrers were properly sustained. The other grounds of the demurrer of the city need not be discussed.

The judgment below is affirmed with costs.