Bonita GLOVER, individually and next friend of Edward L. Barnes, Plaintiffs–Appellees,

v.

**OAKWOOD TERRACE ASSOCIATED II LIMITED, et al., Defendants–Appellants.**

Court of Appeals of Tennessee, Eastern Section, at Nashville.

May 10, 1991.

Permission to Appeal Denied by Supreme Court Sept. 9, 1991.

Rehearing Denied Nov. 4, 1991.

David L. Franklin, Chattanooga, for defendants-appellants.

John W. McClarty, Chattanooga, for plaintiffs-appellees.

OPINION

WILLIAM H. INMAN, Special Judge.

I

This is a personal injury action arising out of an accident to an admitted trespasser at a closed swimming pool at Oakwood Terrace Apartments in Chattanooga on May 15, 1988. Plaintiff Edward L. Barnes, who was sixteen years and eleven months old on that date, was paralyzed when he apparently struck his head on the bottom of the pool while diving. He and his mother, Bonita Glover, brought this action based upon theories of negligence and negligence *per se.*

The pool was rectangular and measured approximately forty by twenty-five feet. Its depth ranged from three feet to six feet. It had no diving board and was not designed for diving. On the date of the accident, two signs were posted in the pool area. On these signs were printed:

Warning—No lifeguard on duty. Children under 14 should not use pool without an adult in attendance.

State Law

Printed on another sign were the "Pool Rules", two of which were:

1. All persons using pool do so at own risk—Owners and management not responsible for accidents or injuries.
2. Pool is for tenants' use ... Others with management permission only.

There was no "No Diving" sign in the pool area, which was completely enclosed with a six foot high chain link fence with a gate. On May 15, 1988, the date of the accident, the pool was closed and the gate was padlocked.

Edward Barnes would have been seventeen years of age eighteen days after the accident. He had learned to swim when he was between two and four years old, and thereafter swam on a regular basis. In 1987, he went swimming about twenty times in local community pools in the Chattanooga area. These pools had diving boards, and he regularly dived and jumped off them. He had hit his chest on the bottom of pools on at least two occasions when he was diving.

Barnes had his driver's license, and his mother bought a car for his use and entrusted it to him. He had worked in a restaurant, was a good athlete, was in the tenth grade at school and a poor student. His "mental age" was said to be twelve to fourteen years.

Young Barnes arrived at the pool on May 15 between 12:00 noon and 1:00 p.m., with two friends, Ginika McKinney and Sylvester Pryor. None of the three was a tenant at the apartment complex and none had an invitation to swim in the pool. Although the pool was closed and the gate was padlocked when they arrived, there were several people inside the fence in the pool area, some of whom had climbed over the fence while others had pulled up the fence and crawled under it.

Barnes and his two friends then proceeded to climb over the fence where it joined a

retaining wall. After entering the pool, he swam, jumped, and played for three or four hours, during which he was in both the deep and shallow ends of the pool. He dived into both ends of the pool on several occasions and swam from one end of the pool to the other. When he dived he held his hands out in front of him so his face would not hit the bottom. On his last dive into the pool at approximately 4:00 p.m. he apparently struck his head on the bottom and fractured two of the vertebrae in his neck which rendered him a quadraplegic. The testimony was conflicting as to the location of the last dive. One witness said he dived off the deep end while other said the shallow end. Barnes did not recall what happened, owing to his injury.

Velia Foster and her 14 year old daughter, Katherlyn, had an apartment located over the pool area at the apartment complex. She testified that children frequently swam in the pool, and that the apartment manager had told her that "unauthorized kids were playing in the pool."

On the day of the accident, even though the pool gate was locked, the pool area was crowded. Velia Foster's daughter and two of her nieces entered the pool area by stepping up on the retaining wall and going through an opening between the wall and the fence. Edward Barnes and his friends entered the pool area the same way. Teenage children from the surrounding neighborhood were continuously coming into the pool area but the management took no action to block the entrance at the wall.

On that day, Katherlyn saw Edward Barnes dive into the pool at the deep end. He did not appear to be frolicking. They were never ordered to leave the area.

The case was tried to a jury on June 20–21, 1990. At the close of plaintiffs' proof, defendants moved for a directed verdict which the trial court denied. At the conclusion of all the proof, defendants again moved for a directed verdict, and again it was denied. The jury returned verdicts of $300,000.00 for Barnes and $100,000.00 for Glover, and the motion for judgment NOV or for a new trial was denied.

II

■ The case was allowed to go to the jury on the attractive nuisance theory, although the instructions included various references to a trap, and to ordinary and gross negligence. It thus becomes our duty to determine if the evidence favorable to the plaintiffs, together with all reasonable inferences to be drawn therefrom, supports the verdict under any pleaded theory. Rule 13(d) *Rules of Appellate procedure*. We cannot weigh the evidence, *Holmes v. Wilson*, 551 S.W.2d 682 (Tenn.1977); *Crosslin v. Alsup*, 594 S.W.2d 379 (Tenn. 1980), and must take the strongest legitimate view of the evidence in favor of the plaintiffs.

■ The appellees argue that sufficient evidence was presented that the pool was a trap, justifying a verdict for the plaintiffs. In *Toole v. Levitt*, 492 S.W.2d 230 (Tenn. App.1972), a trap is defined as "any hidden, dangerous condition which a person who does not know the premises could not avoid by reasonable care and skill". An expert for the plaintiffs testified that "there's a ridge runs across where the lifeline was about three or four inches inside the lifeline when I dove down and swam around on the pool. It comes up approximately an inch in my estimation". He also testified that the depth markers were misleading because the water's depth, on the day he gauged it, was only five feet, nine inches. We need not belabor the point. In our view this swimming pool did not constitute a trap—even for the unwary—much less for an experienced swimmer who had been in the pool for about four hours. In *Toole*, supra, the swimming pool was held not to constitute a trap, and the circumstances of that case are far more pronounced than here. It is not disputed that the water was clear, the depth marked, the pool was free of foreign objects, was surrounded by a fence six-feet high, the gate was padlocked, and that young Barnes trespassed for three or four hours before his diving accident.

III

In *Metropolitan Government of Nashville in Davidson County v. Counts*, 541

S.W.2d 133 (Tenn.1976), the Supreme Court adopted as the law of Tennessee Section 339 of the *Restatement (2d) of Torts* to set out the elements of the doctrine of Attractive Nuisance, which are:

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass, and

(b) the condition is one which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily injury to such children, and

(c) the children, because of their youth, do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Comment (c) to Section 339 of the *Restatement* specifically addresses the definition of "children", and, while not setting any age limits, provides:

In the great majority of the cases in which the rule here stated has been applied, the plaintiff has been a child of not more than twelve years of age. As the age of the child increases, conditions become fewer for which there can be recovery under this rule, until at some intermediate point, probably beyond the age of sixteen, there are no longer any such conditions.

Comment (i) to Section 339 discusses the realization of the risk by a child, and states that the doctrine does not extend

to those conditions the existence of which is obvious, even to children, and the risk of which should be fully realized by them.

Comment (m) further notes:

The purpose of the duty is to protect children from dangers which they do not appreciate and not to protect them against harm resulting from their own immature recklessness in the case of known and appreciated danger.... Therefore, even though the condition is one which the possessor should realize to be such that young children are unlikely to realize the full extent of the danger of meddling with it or encountering it the possessor is not subject to liability to a child who in fact discovers the condition and appreciates the full risk involved, but nonetheless chooses to encounter it out of recklessness or bravado.

■ A swimming pool is not *per se* an "attractive nuisance". In *Dupont Rayon Company v. Roberson*, 12 Tenn.App. 261 (1930), the court held that a swimming pool in a good state of repair "was in no sense an attractive nuisance when it was leased to the defendant...."

■ Furthermore, the Supreme Court held in *Counts, supra*, that a body of water is not an "attractive nuisance" unless there is some unusual or hidden danger in it. In that case, the Supreme Court stated:

Tennessee cases have consistently applied the rule that absent evidence of an unusual or hidden danger—a danger other than that incident to all bodies of water—a landowner will not be held liable for the death of a trespassing child by drowning in a pond or other body of water maintained on his premises.

In the *Counts* case, a ten year old boy drowned while swimming in a cattle pond. The Supreme Court, after first noting that the issue of whether the Attractive Nuisance Doctrine is applicable in a case is a question for the court held that the doctrine did not apply in that case because three of the required elements were not present.

In the course of its opinion, the Supreme Court said:

Although in the present case there is evidence from which a jury could conclude that defendant knew or should have known of the presence of trespassing children, there is no evidence in the record from which a jury could conclude

that any of the remaining elements of the "doctrine of attractive nuisance" are present. Specifically, the element of unreasonable risk of death or serious bodily harm is not present because the pond in this case is an ordinary cattle pond and there is no evidence that it is characterized by any unusual or hidden danger. Tennessee cases have consistently applied the rule that absent evidence of an unusual or hidden danger—a danger other than that instant to all bodies of water—a land-owner will not be held liable for the death of a trespassing child by drowning in a pond or other body of water maintained on his premises.

Evidence of the third element of the "Attractive Nuisance Doctrine"—the inability of children, because of their youth, to discover or comprehend the risk involve—is also absent in this case. It is well established that the "Attractive Nuisance Doctrine" does not apply to situations in which the condition causing the harm is one involving a common and obvious danger.

Finally, the fourth element of "attractive nuisance" requires a comparison of the utility of maintaining the condition, and the burden of eliminating any danger, with the risk of harming trespassing children. In this case, the pond served the useful function of watering livestock kept by the county hospital. In view of the fact that the risk of drowning in this pond is slight, there being no unusual or hidden danger present, we think that it would be an unreasonable burden to require defendant to maintain a full-time guard or to erect and maintain a fence which would effectively prevent the trespass of children.

The appellees stress the fact that Barnes was not fully developed mentally, since his "mental age", was between 13 and 14 years. Even so, the appellee's expert conceded that a 13-year old boy should appreciate the danger of diving into a pool of water. There is no authority in Tennessee for the proposition that liability under the Attractive Nuisance Doctrine can be imposed upon defendants because the plaintiff has not developed intellectually as rap-idly as other seventeen year olds. See, *Pardue v. City of Sweetwater*, 54 Tenn. App. 286, 390 S.W.2d 683, 685 (1965) (applying the doctrine to children of "tender years"); *Pirtle v. Hart's Bakery, Inc.*, 52 Tenn.App. 131, 372 S.W.2d 209, 212 (1963) (limiting the doctrine to "small children"); *Gatlinburg Construction Company v. McKinney*, 37 Tenn.App. 343, 263 S.W.2d 765, 767 (Tenn.App.1954) (applying the doctrine to "children of immature years"); *William v. Town of Morristown*, 32 Tenn. App. 274, 222 S.W.2d 607, 612 (1949) (limiting the doctrine to children of "tender years").

We conclude that the motion for judgment notwithstanding the verdict should have been granted. The judgment is reversed and the case is dismissed at the Appellee's costs.

SANDERS, P.J., concurs.

FRANKS, J., dissents.

FRANKS, Judge, dissenting.

There is material evidence to support the verdict of the jury which was approved by the trial judge. In my view, the majority ignores applicable law, *i.e.*, a minor's capacity for negligence is a jury question and substitutes its judgment for that of the trier of fact denying plaintiffs a trial by jury.

Where a jury verdict has been approved by the trial judge, appellate courts are required to take the strongest legitimate view of the evidence in favor of the result. If there is any material evidence to support that result, the judgment must be affirmed. *See Overton v. Davis*, 739 S.W.2d 2 (Tenn. App.1987).

The majority cites *Metropolitan Gov't of Nashville v. Counts*, 541 S.W.2d 133 (Tenn. 1976), wherein the Tennessee Supreme Court adopted elements of attractive nuisance found in the *Restatement (Second) of Torts* § 339. There is material evidence in the record to support a jury verdict for plaintiff under each of these elements.

§ 339(a) the place where the condition exists is one upon which the possessor

knows or has reason to know that children are likely to trespass ...

*Counts* held the landowner's knowledge that children are habitually trespassing to play is tantamount to the old common-law requirement that children be lured onto the premises. 541 S.W.2d at 136. The record is replete with references to the management's awareness that neighborhood children frequented the pool and that many adults and children were trespassing at the pool on the day of plaintiff's injuries. An opening in the fence large enough for a 13–year old girl to pass through was utilized by some and others crawled under or climbed over a retaining wall, which made entry to the pool easily accessible.

> § 339(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children.

Again, the record provides material evidence from which the jury could conclude that the apartment management knew the pool was dangerous. An expert witness testified that the pool had numerous defects: inaccurate depth markers; no sign prohibiting diving; plus a woefully inadequate fence. These defects constitute violations of state regulations on pool maintenance.[1]

> § 339(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it.

In this regard, the expert witness opined that the pool contained hidden hazards that a person like the plaintiff might not have been able to assess.

Under Tennessee law, there is a rebuttable presumption that a child between 7 and 14 is incapable of negligence; conversely, there is a rebuttable presumption that a child 14 and over is capable of negligence as an adult. This standard, known as the Rule of Sevens, has long been the law in this jurisdiction. *See e.g., Prater v. Burns*, 525 S.W.2d 846 (Tenn.App.1975); *Williams v. Williams*, 63 Tenn.App. 252, 470 S.W.2d 368 (1971); *Bailey v. Williams*, 48 Tenn.App. 320, 346 S.W.2d 285 (1960). The Rule of Sevens is only part of the test for a minor's capacity for negligence. The issue is further evaluated in the light of a minor's age, ability, intelligence, training and experience. *See Prater*, 525 S.W.2d at 852; *Williams*, 470 S.W.2d at 374. Moreover, the same standards are used to evaluate a minor's capacity for contributory negligence. In *Williams*, whether children were capable of negligence was a jury question. In a recent opinion we have said that the fact question about a minor's negligence is evaluated in light of what would be reasonable to expect of a child of "like age, capacity, knowledge and experience." *Learue ex rel. Learue v. State*, 757 S.W.2d 3 (Tenn.App.1987).

While there is a split of authority on the issue of whether a minor above the age of 14 may assert a claim on the theory of attractive nuisance, jurisdictions such as Tennessee that have adopted the *Restatement* say there is no fixed age limit for application of the attractive nuisance doctrine to teenagers. *See* Annot., 16 A.L.R.3d 25, 81 (1967 & Supp.1990). In fact, comment (c) to the *Restatement*, cited in part by the majority, says that although the doctrine is not often applied to children over 12, in a substantial number of later cases recovery has been allowed for children as old as 17. *Id.*[2] As *Learue* suggests, the contributory negligence of a minor over 14 is a fact question in which age is but one of several criteria. Other cases which embrace the presumption language of *Learue* have held that older teens are not barred from reliance on the attractive nuisance doctrine by their age alone. *E.g.,* in *Skaggs v. Junis*, 27 Ill.App.2d 251, 169

---

1. The fact that defendant put the pool under padlock suggests an awareness that some danger might have been posed by the water-filled pool that did not meet state safety guidelines.

2. In *McIntyre v. McIntyre*, 558 S.W.2d 836 (1977), the Supreme Court refused to rule as a matter of law that a child age 14 or older could not bring himself within "the attractive nuisance or playground doctrine." *Id.,* at 838.

N.E.2d 684 (1960), whether a 16 year old diver was contributorily negligent was a question for the jury considering the minor's experience, intelligence and capacity. In *Dickeson v. Baltimore & Ohio Chicago Terminal RR Co.*, 42 Ill.2d 103, 245 N.E.2d 762 (1969), the court said that a 14–year old plaintiff's "dull-normal" I.Q. score of 81 was a factor to be considered by the jury on the issue of the minor's contributory negligence.

Expert testimony in this case placed the plaintiff's mental capacity at 12 to 14 years of age. In an I.Q. test before the accident, plaintiff tested at the border of low average to retarded in language comprehension skills. Unlike the evidence in *Learue*, there is evidence in this record from which a jury could infer that Barnes would not have comprehended the risk of injury by diving into the pool.

§ 339(d), (e)(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved, and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children.

Unlike *Counts*, where a cattle pond was utilized by the owner in an unguarded state, the swimming pool was not "usable" by the complex in its inadequate state of maintenance and repair. The groundkeeper testified that a "No Diving" sign could have been posted for about $2.00. The fence was in such a state of disrepair that users could easily crawl under it, walk through a hole in it or scramble over the top of it and constituted no real deterrent to trespassing children's use of the pool. Arguably, a comparison could be made to a broken lock on an abandoned refrigerator. The fence had some symbolic value, but even that impact was dispelled when it was soon discovered by the users to be no real impediment to the use of the pool. Of course, the complex need not insure the safety of trespassing children but the burden of repairing the fence and putting the pool in compliance with state regulation was slight in comparison with the risk posed to such children.

In a case cited by the majority, the trial court set aside a jury verdict on behalf of a child who drowned in a municipal swimming pool. Reversing, this court held that in an attractive nuisance case, the negligence of the town and contributory negligence of the child were jury questions for which there was disputed material evidence in the record:

There is abundant evidence ... from which the jury could have found that defendant had permitted children to use these grounds ... had actual knowledge they would so use them; the pool was located upon the grounds; it was dangerous; and defendant did not exercise ordinary care in providing safeguards against the dangerous pool. *Williams v. Town of Morristown*, 222 S.W.2d 607 (Tenn.App.1949), *modified* 222 S.W.2d 615 (Tenn.1949) (remand for new trial unnecessary and judgment entered for plaintiffs).

The same could be said of the facts in this case. There was material evidence in the record to support the jury's conclusion that the pool constituted an attractive nuisance and that plaintiff did not have the capacity to understand that diving into the pool could cause his injuries. Therefore, I dissent and would affirm the trial court's judgment.