# WILLIAMS v. TOWN OF MORRISTOWN et al.
## (two cases).—222 S. W. (2d) 607.

Middle Section. February 2, 1949.

Petition for Certiorari denied by Supreme Court, July 9 1949.

Kilgo & Armstrong, of Greeneville, Hodges & Doughty, of Knoxville, for plaintiffs in error.

Stuart F. Dye, of Knoxville, E. R. Taylor, of Morristown, for defendants in error.

HICKERSON, J. Barbara Jean Williams, a child nine years old, was drowned in a reservoir or pool which was a part of the water works system of the Town of Morristown, Tennessee. Margaret Louise Williams, twenty-nine years old, aunt of Barbara Jean, was drowned at the same time in an effort to rescue Barbara Jean. These suits were brought to recover damages for their deaths.

The suits were tried together below, but separate records were made. They come to this court as separate cases; but we shall dispose of them in one opinion. The bills of exception in the two cases before us are identical. The suits were brought against the Town of Morristown and the Board of Electric Light and Water Works Commissioners for the Municipal Corporation of the Board of Mayor and Aldermen of the Town of Morristown, Tennessee, namely: R. T. Bales, H. S. Walters, and J. B. Neill. We shall refer to these parties as defendant since there is no personal liability against the commissioners.

Liability in the case involving Margaret Louise Williams' death depends upon liability in the case which involves the death of Barbara Jean Williams; so we shall first consider and dispose of the latter case.

In substance, plaintiff, the administrator of the estate of Barbara Jean Williams, alleged in his declaration:

The area around this reservoir or pool, which was owned and operated as a part of the water works system of defendant, was used as a picnic ground by all the people with the knowledge of defendant and had been so used for many years. Children constantly frequented the grounds. The pool where Barbara Jean Williams was drowned was an attractive place to children. Defendants negligently maintained this pool in that: (1) There were no warning signs that the pool was dangerous; (2) There were no fences nor guards nor watchmen to prevent accidents at the pool; (3) The pool was constructed so the walls, made of cement, sloped sharply to the bottom; (4) They were covered with moss and these two conditions made it impossible for anyone to wade out of the reservoir; and (5) The pool was so clear that it appeared to be shallow when it was nine feet deep.

Barbara Jean Williams came to these grounds on July 21, 1947, with her aunt and several other persons to enjoy a picnic. She was attracted to the reservoir and fell into it while playing around it and was drowned.

By amendment to his declaration, plaintiff alleged defendant carried insurance as a protection against any liability "for torts or negligence," in connection with the operation of its water works system. This allegation in the amendment to the declaration was stricken by the trial judge upon motion of defendant.

Defendant pleaded the general issue.

At the conclusion of the evidence, the trial judge overruled defendant's motion for directed verdict. The jury returned a verdict for plaintiff and judgment was entered thereon.

The motion of defendant for new trial was sustained, and judgment set aside. Thereupon, the trial judge directed a verdict for defendant and dismissed plaintiffs' suits.

Plaintiff's motion for new trial was overruled, and he appealed in error to this court.

Two questions are made by the assignments of error:

(1) Did the trial judge err when he directed a verdict for defendant?

(2) Did the trial judge err when he struck that part of plaintiff's declaration wherein plaintiff alleged that defendant carried insurance to protect it against suits in tort?

Since the motion for directed verdict was upon general grounds, we must determine if the motion could have been sustained upon any ground.

The following specific defenses to the suit were interposed:

(1) The area where the pool and picnic grounds were located was a public park of defendant; in the maintenance of this park defendant acted in its governmental capacity; and it was therefore immune from suit in a tort action involving an accident in connection with the operation of the park.

(2) In maintaining the pool in which Barbara Jean Williams was drowned, defendant was acting in its governmental capacity; and for that reason it was not liable for her death.

(3) Barbara Jean Williams was a trespasser upon the premises of defendant when she met her death and defendant owed her no duty except to refrain from wilfully and wantonly injuring her; and there was no proof of wilful or wanton negligence.

(4) Barbara Jean Williams and her parents were guilty of contributory negligence, as a matter of law, which precluded her recovery.

We shall respond to these contentions or defenses of defendant in the order stated.

(1) Did defendant act in its governmental capacity in the maintenance of this picnic ground on which the pool, wherein Barbara Jean Williams was drowned, was located?

■ Operating a public park by a municipality is a governmental function. City of Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111, L. R. A. 1915D, 1108; Rector v. Nashville, 23 Tenn. App. 495, 134 S. W. (2d) 892.

■ At common law a municipality is immune from suit in tort if it is acting in its governmental capacity; and it is liable in tort when it is acting in a private capacity. 38 Am. Jur., 261, Municipal Corporations, Section 572. There is no statute on the subject in this state.

These picnic grounds were not operated by defendant as a public park. It was an area owned by defendant upon which were located the water works reservoirs. By consent, and as a matter of practice, defendant had permitted people to use the grounds for picnic purposes. Although express permission was not given each time the grounds were used for picnics, defendant had knowledge that they were being used in this manner and made no objection thereto.

"A park is a pleasure ground set apart for recreation of the public, to promote its health and enjoyment." Williams v. Gallatin, 229 N. Y. 248, 128 N. E. 121, 122, 18 A. L. R. 1238.

A park is defined in 39 Am. Jur., 803, Parks, Squares, and Playgrounds, Section 2:

"The term 'park,' as now commonly understood in this country, means a piece of ground acquired by a city, town, or other public authority, for ornament, and as a place for the resort of the public for recreation and amusement."

■ Quite obviously, defendant did not maintain this picnic area as a public park within the meaning of these definitions of a public park. It cannot escape liability for the death of Barbara Jean Williams on the ground that she lost her life in a public park operated by defendant in its governmental capacity.

(2) Was defendant acting in its governmental capacity in the maintenance of the reservoir or pool in which Barbara Jean Williams was drowned?

■ To define specifically the terms "governmental capacity" and "proprietary capacity" is impossible. Wherefore, each case must be decided upon its own facts. The purpose and character of the undertaking, and the method of its operation, determine whether it is public or private.

■ It is the settled common law of this state that the operation of an electrical power system or a water works system is a corporate or private function of a municipality, and not a public or governmental function. Memphis Power & Light Company v. City of Memphis, 172 Tenn. 346, 112 S. W. (2d) 817; Saulman v. Mayor and City Counsel of Nashville, 131 Tenn. 427, 175 S. W. 532, 533, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254.

In the Saulman case, the court quoted with approval from McQuillan on Municipal Corporations, Volume 4, section 2622, where it is said:

"Yet in every state except South Carolina it is the settled rule that a municipality is liable at common law

for its torts in the performance or nonperformance of municipal or corporate duties, as distinguished from governmental duties.''

Section 2680:

''It is settled beyond dispute that a municipality which operates its own water, electric light, or gas plant acts in a private and not a governmental capacity, and is liable for its negligence in connection therewith.''

In Stocker v. City of Nashville, 174 Tenn. 483, 126 S. W. (2d) 339, 340, 124 A. L. R. 345, the court said:

''The clear and unmistakable terms of the Act under which the City of Nashville maintains and operates this Airport leaves no room for construction or debate as to classification and we find no valid reason for refusing to give effect to its immunity provision.

''We have here a direct legislative declaration on which is conditioned the grant of power to municipalities to engage in this enterprise that it is a 'public governmental function', and that the municipality shall not be subject to suit on account of the exercise thereof.''

Defendant takes the position that this water system was operated by it without profit in obedience to the provisions of the statute authorizing it to own and operate its water system, and, therefore, the system was operated in its governmental capacity.

■ If a municipal enterprise is operated for profit, it is a proprietary undertaking; but it does not follow, necessarily, that it is a governmental undertaking if it is not operated for profit. Saulman v. Mayor and City Council of Nashville, supra.

If the Act which authorized the operation of the water system by defendant expressly declared such enterprise to be a governmental function, we should feel bound to

accept such legislative declaration under the authority of Stocker v. City of Nashville, supra.

The operation of this water system was authorized by Chapter 392, Acts of 1901. This Act provides:

"Said Electric Light and Water Works commissioners shall have charge and supervision of the electric light and water works systems of the corporation, and shall have full power to make all contracts necessary to the operation thereof, employing such help as may be necessary, and fixing the salaries of all employes, and shall fix all water and light rates, and, through their Secretary, collect the same, it being the intention hereby to make said Board of Electric Light and Water Works Commissioners a separate and independent body for the performance of the duties of the positions to which they are elected. The fees or proceeds arising for the use of water and lights, when collected, shall be turned over to the Treasurer of the town, and each shall be by him kept separate from the other as a separate fund to be applied to the operation of said electric light and water works systems, and any surplus remaining thereafter is to be applied to the principle [principal] and interest of the indebtedness of the municipality incurred in the purchase of said electric light system and said water works system, the proceeds of the electric light plant to be applied to the operation and payment of the indebtedness incurred in the erection and purchase thereof, and the proceeds of the water works likewise to the operation and payment of the indebtedness thereof. The net proceeds of each plant shall only be liable for the debts and liabilities of that particular plant hereafter occurring, but the property of each plant and the proceeds thereof shall be liable for the debts heretofore

contracted. Said Commissioners will make quarterly reports to the Board of Mayor and Aldermen of the town of Morristown, setting out in said report separately the receipts and disbursements of each of said plants, and reciting therein all business transacted by them since the date of their last report.'' Section 3.

In actual practice this water system was used to supply water to individuals in the area which it served for a consideration paid to defendant and by defendant itself for fighting fires and washing streets of the municipality. It was authorized to use the proceeds from the sale of water to meet the operating expenses of the system, to pay principal and interest on the purchase price and to make extensions. Any net balance was used to reduce the rates charged to individual consumers.

We do not think the term ''profit'' as it is used in connection with the operation of public utilities by municipalities means ''net profit'' as that term is used in the operation of private corporations. A more exact meaning of the term ''profit,'' as it is thus used, is that the system is operated upon a revenue basis; that is, the water is sold to individual consumers for a consideration, fee emolument, or price, which is paid to the municipality.

In 50 C. J., 645, Profit or Profits, Section 1, the word ''profit'' is defined:

''In a wider sense it means, any advantage, any accession of good from labour or exertion. 'Profit,' it is said, is broad enough to cover any sort of advantage, advance, or gain, and benefits of any kind.''

So, the operation of a water works system by a municipality for ''profit'' means the system is being conducted on a commercial basis for revenue and not as a

governmental enterprise out of public funds for the common good.

An extended analysis or discussion of the cases dealing with the subject of governmental or corporate acts of a municipality is not necessary. The Private Act under which defendant operated its water system did not declare that such enterprise was a governmental undertaking. When rules laid down by repeated decisions in this jurisdiction are applied to the undisputed facts in this case, defendant was clearly operating its water system in its corporate, private, or proprietary capacity. Mayor, etc., of City of Memphis v. Lasser, 28 Tenn. 757; Mayor, etc., of City of Memphis v. Kimbrough, 59 Tenn. 133; Foster v. Lookout Water Company, 71 Tenn. 42; Irvine v. Chattanooga, 101 Tenn. 291, 47 S. W. 419; Saulman v. Mayor and City Council of Nashville, 131 Tenn. 427, 175 S. W. 532, L. R. A. 1915E, 316, Ann. Cas. 1916C, 1254; City of Nashville v. Mason, 137 Tenn. 169, 192 S. W. 915, L. R. A. 1917D, 914; Nashville Trust Company v. City of Nashville, 182 Tenn. 545, 188 S. W. (2d) 342; Nashville Electric Service v. Luna, 185 Tenn. 175, 204 S. W. (2d) 529.

(3) If we assume that Barbara Jean Williams was a technical trespasser upon the grounds of defendant when she was drowned, would such fact preclude a recovery for her death?

It is the general rule that the landlord owes a trespasser no duty except to refrain from wilfully injuring him. There is no proof in the record that defendant wilfully brought about the death of Barbara Jean Williams. This general rule is subject to exceptions: (a) if the injured person be a child of tender years, and the dangerous condition is such that it con-

stitutes an attractive nuisance to the child, the landlord will be held liable for injuries sustained by her because of the attractive nuisance, although the child is a trespasser; and (b) if an owner of land knows that children of tender years habitually play upon his land to the extent that such premises become known as a playground for children, he is bound to exercise ordinary care to see that his premises are reasonably safe for such children. To hold otherwise would establish a principle that the owner would not be liable for injuries resulting to children from dangers to which he knowingly exposed them. Anderson v. Peters, 22 Tenn. App. 563, 124 S. W. (2d) 717; Garis v. Eberling, 18 Tenn. App. 1, 71 S. W. (2d) 215; Ray v. Hutchison, 17 Tenn. App. 477, .68 S. W. (2d) 948.

██ Whether a condition creates an attractive nuisance is a question of law for the court. Louisville & N. Railroad Company v. Ray, 124 Tenn. 16, 134 S. W. 858, Ann. Cas. 1912D, 910.

At the conclusion of an elaborate annotation consisting of 260 pages devoted to the subject "Attractive Nuisances" in the case of United Zinc & Chemical Company v. Britt, 258 U. S. 268, 42 S. Ct. 299, 66 L. Ed. 615, 36 A. L. R. 28. At page 294 of 36 A. L. R. the annotator stated the essentials of a case based upon the doctrine of attractive nuisance:

"To make out a case against the person responsible for the danger, there must appear:

"First. That the injured child was too young to understand and avoid the danger.

"Second. That there was reason to anticipate the presence of such children, either because of some attraction on the premises, or because the danger was in some place where children had a right to be.

"Third. That there was a strong likelihood of accident.

"Fourth. That the danger was one other than those ordinarily encountered.

"Fifth. That the precautions not taken were such as a reasonably prudent person would have taken under the circumstances.

We think each of these requirements is met in the case at bar.

First. Barbara Jean Williams was only nine years old. She was too young to understand that the water in the pool was much deeper than it appeared to be; that the pool was not suitable for wading purposes because the moss on the sloping walls was so slick she could not stand up on it; and, having no appreciation of this danger, she could not avoid it.

Second. Defendant knew children had frequented these premises for many years attending picnics and it had given its tacit consent thereto. The pool was on the grounds where the defendant knew the children would and did play.

Third. There can be no doubt that there was a strong likelihood of accident. Children will wade in water. The caretaker testified he had seen hundreds of them around this pool.

Fourth. The danger was exceptional. It is doubtful if adults would have recognized the danger lurking in the pool. It was deceptive as to depth because of the clear water and treacherous because of the sloping floor and walls and the slick moss on them.

Fifth. Ordinarily prudence and care required precautions around this pool to prevent accidents, such as warning signs, guards, or fences. The superintendent said the pool was dangerous. The caretaker said it

was dangerous. They had discussed putting a fence around it as a protection against the danger, but they had not done so.

Under these undisputed facts, we hold the pool did constitute an attractive nuisance, and that defendant is liable in tort for injuries to this child caused by same even though the child were a trespasser.

We shall now consider the second exception to the general rule that a land owner owes no duty to a trespasser except to refrain from wilfully injuring him, to-wit: the landlord must exercise ordinary care to protect children from dangers on his premises if he has permitted children to play upon the premises to such an extent that they are known as playgrounds for the children and he has knowledge that the children do frequent and use the grounds.

The jury must determine these questions under the rules relating to trials by juries. In reviewing the judgment of the trial court directing a verdict for defendant on these issues, we are governed by the rules that, upon the consideration of a motion made by defendant for directed verdict "plaintiff is entitled to all legitimate inferences of fact favorable to him which may be reasonably drawn from the evidence tending to support the cause of action stated in his declaration", Prudential Insurance Company v. Davis, 18 Tenn. App. 413, 429, 78 S. W. (2d) 358, 368; and "the trial judge should take the most favorable view of the evidence supporting the rights asserted by the party against whom the motion is made, and discard all countervailing evidence", Wildman Manufacturing Company v. Davenport Hosiery Mills, 147 Tenn. 551, 249 S. W. 984, 985.

There is abundant evidence in the record from which the jury could have found that defendant had per-

mitted children to use these grounds as picnic grounds for twenty-five or thirty years; had actual knowledge they would so use them; the pool was located upon the grounds; it was dangerous; and defendant did not exercise ordinary care in providing safeguards against the dangerous pool.

Likewise, we think the question of the contributory negligence of Barbara Jean Williams and her parents was a jury question. About two minutes had passed from the time the picnic party arrived at the grounds until Barbara Jean fell into the water. We would not be justified in holding, as a matter of law, that her aunt was negligent when she momentarily let the child get out of her sight. To do so we would have to hold that all reasonable men must reach the conclusion that this aunt failed to exercise that degree of care that ordinarily prudent persons would have exercised under similar circumstances for the protection of this child. It is our opinion that the aunt did what an ordinarily prudent person would have done: she was busy with the picnic lunch and for some two minutes failed to observe Barbara Jean who was playing with the other children. Dan v. Citizens' Street Railroad Company, 99 Tenn. 88, 41 S. W. 339. The jury must decide whether such conduct constituted negligence. Osborn v. City of Nashville, 182 Tenn. 197, 185 S. W. (2d) 510.

(4) In view of the conclusions which we have reached, the trial judge properly struck that portion of the declaration wherein it was alleged defendant carried insurance to protect it from tort liability.

It is the rule in this jurisdiction that evidence shall not be admitted that defendant is insured against the liability sought to be established against him in the suit. Marshall v. North Branch Transfer Company, 166

Tenn. 96, 59 S. W. (2d) 520; Prewitt-Spur Manufacturing Company v. Woodall, 115 Tenn. 605, 90 S. W. 623.

The only legitimate purpose of the amendment was to fix liability against defendant if the court should hold defendant was immune from the tort action because it was performing a governmental function in maintaining the picnic grounds or pool. Since we have held that it was performing a corporate act, the question of liability insurance has no place in the case.

 It is our opinion that the question of liability insurance would be a proper question of pleading and proof if the enterprise had been a governmental and not a corporate undertaking. Travelers Insurance Company v. Dudley, 180 Tenn. 191, 173 S. W. (2d) 142; Rogers v. Butler, 170 Tenn. 125, 92 S. W. (2d) 414; McLeod v. St. Thomas Hospital, 170 Tenn. 423, 95 S. W. (2d) 917; Taylor v. Cobble, 28 Tenn. App. 167, 187 S. W. (2d) 648.

 The trend of these decisions is that a defendant and its insurance carrier are liable to the injured party, although the defendant would not be liable unless it carried the liability insurance. It would be an entirely useless gesture and waste of public funds for a municipality to carry liability insurance to protect it in tort actions incurred in connection with its governmental acts if it were required to plead and set up governmental immunity as a defense. The more equitable rule, sanctioned by reason and common sense, would be to permit plaintiff to plead and prove that defendant carried liability insurance; then limit the judgment to such coverage. That seems to us to be a reasonable extension of the rules already announced by our courts.

 There remains only one question for decision. Defendant contends that the negligence of Margaret

Louise Williams prevents a recovery of damages for her death. When one person is exposed to danger through the negligence of another, the latter will be liable in damages to a third person who is injured in a reasonable effort to rescue the person who is exposed to the peril. Chattanooga Light & Power Company v. Hodges, 109 Tenn. 331, 70 S. W. 616, 60 L. R. A. 459, 97 Am. St. Rep. 844. Whether Margaret Louise Williams exercised reasonable care in her effort to rescue Barbara Jean Williams was a question of fact for the jury.

For the reasons stated, the assignments of error are sustained; and the judgment of the circuit court in each case is reversed. The costs of the appeal are adjudged against defendant. Remand the cases to the circuit court of Hamblen County for trial on the merits.

ANDERSON, P. J., and FELTS and SWEPSTON, JJ., concur.