Charles NISHAN, Jr.,

v.

William GODSEY and City of Loudon.

Civ. A. No. 3408.

United States District Court
E. D. Tennessee, N. D.

Sept. 30, 1958.

D. H. Rosier, Jr., Maryville, Tenn., Erby Jenkins, Knoxville, Tenn., for plaintiff.

Hodges & Doughty, Knoxville, Tenn., Ivo W. Sanders, Loudon, Tenn., for defendants.

ROBERT L. TAYLOR, District Judge.

This suit was instituted to recover damages for personal injuries resulting from a pistol shot on January 15, 1957,

at White's Filling Station in Loudon County, Tennessee. Plaintiff is a citizen of Boston, Massachusetts, and defendant Godsey, a former policeman employed by the City of Loudon, is a resident of Tennessee, and the City of Loudon is a municipality created by the Tennessee Legislature. Jurisdiction of this court is based on diversity of citizenship.

At the time of the accident Godsey was a policeman employed by the City of Loudon. On the occasion of the accident, plaintiff Nishan, defendant Godsey and Cable, a boy 20 years of age, were in White's Filling Station. Nishan had gone there to collect an insurance premium, he being an insurance salesman. He had gone to the station with Cable. Godsey was at the station to purchase gasoline for his car before returning to his home. He worked for the city on the 11:00 p. m. to 7:00 a. m. shift on the night of January 14, 1957, which was his regular shift. Having completed his shift on this night he was called, along with policeman Thomas, to investigate an alleged "drunk" and the investigation continued until around 8:10 a. m. or 8:15 a. m. on the morning of January 15, 1957. Having completed his investigation he returned to his home in his own car in policeman's clothes and transported his children to school. He did not have time to change to street clothes while at home. He went directly from the school in his own car—he frequently used his personal car on city business—where he left his children, to confer with the Chief of the Fire Department of the City of Loudon about a traffic problem that arose in connection with a disastrous fire in which one person had lost his life a day or two previous to January 15, 1957. His primary purpose in returning to the city after leaving his children at the school was to confer with the Chief of the Fire Department. At the completion of this conference he went directly to the filling station to purchase some gasoline before going home. He arrived at the filling station shortly after 9:00 a. m. Plaintiff was accidentally injured by a shot from the pistol of Godsey while in the filling station around 9:30 a. m. The only eye witnesses to the accident were Nishan, Godsey and Cable. Godsey's version of the accident is that after, or during, an exchange of words of playful ridicule between the parties that Nishan placed his hand on his (Godsey's) belt at a place near his pistol holster and in doing so dislodged the safety device which caused the pistol to release the shot. Nishan's version is that after, or during the exchange of pleasant words, Godsey pulled his pistol from the holster and held it up above his head and while lowering his hand in which the pistol was held, the pistol fired. At the time the pistol fired the parties were from two to three feet apart. Nishan's body never came in contact with Godsey except when they shook hands. The testimony of Cable, a disinterested witness, corrobated the testimony of Nishan as to the material circumstances surrounding the accident.

The parties agreed that Godsey and Nishan were friends at the time of the accident and had been friends for some several months; that they had engaged in the exchange of pleasantries on several occasions prior to the accident.

The suit was originally for $40,000 but by amendment was reduced to $10,000. There was in force at the time of the accident a policy of liability insurance in favor of the city in the sum of $10,000. The city waived its governmental immunity from tort liability to the extent of $10,000. Rogers v. Butler, 170 Tenn. 125, 92 S.W.2d 414; Williams v. Town of Morristown, 32 Tenn.App. 274, 222 S.W.2d 607; Bailey v. City of Knoxville, D.C., 113 F.Supp. 3.

Counsel for the City of Loudon agrees with counsel for plaintiff that the City of Loudon in this case occupies a position identical with a private corporation to the extent of the insurance coverage.

The plaintiff predicates his case on two theories: First, the respondeat superior relation which he says existed be-

tween the city and Godsey at the time of the accident; and second, that the city was negligent in its employment and retention of Godsey as a policeman. In support of this second theory it is contended that Godsey had the reputation of handling firearms in a loose and dangerous manner at the time he was employed and that this reputation continued up to and including the date of the accident; that the city was also negligent in permitting him to carry a pistol at all times, especially so without instructing him in the use of firearms; and having placed a dangerous instrumentality in his possession under such circumstances the city is held to strict liability for injuries caused the third person in the negligent use of the pistol by Godsey.

There was proof to the effect that Godsey played with his pistol on two occasions in separate restaurants prior to the accident; that he had his pistol out of its holster in the presence of girls and permitted them to look at it on one occasion; that he had his pistol out of its holster on one or more occasions at the fire hall; that he shot in the nighttime when a car failed to stop for a red light while passing through the city; and that Godsey had a bad reputation in Johnson City, his former home. Competent evidence fails to show that Godsey had a bad reputation in Johnson City. Witness Mattney, a former restaurant operator in Johnson City, stated that he had heard that Godsey's reputation in Johnson City was bad but upon cross-examination it was developed that the only thing he had heard about his reputation was that he had engaged in two or three fights. This was denied by Godsey. None of these matters were brought to light until after the accident and there is no evidence that the city knew or by the exercise of ordinary care should have known of them prior to the accident.

In the light of Godsey's unequivocal denials, supplemented by the fact that good citizens testified as to his reputation as an officer, the testimony that he was a man of bad reputation is not convincing.

■ The Court finds as a fact from a preponderance of the evidence that the city was not negligent either in employing Godsey as a policeman or in continuing him in that capacity until the date of the accident.

We come now to the main contention of the plaintiff. This contention involves the principles of respondeat superior. The plaintiff says that Godsey was in the line of duty at the time of the accident and that the city is responsible for his negligent acts. Although the policemen for the City of Loudon worked on 8-hour shifts at the time of the accident, they were instructed by their superiors that they were on duty 24 hours each day. Godsey understood that he was on duty at all times. He carried a pistol when not working on his regular shift under an arrangement made with the City of Loudon and the Sheriff of Loudon County, hence the city authorities knew that he, along with the other policemen, carried pistols when not working on a regular shift. He was subject to call at all times and was frequently called for duty when not on his regular shift. As previously shown, he was called for duty after his shift ended on July 15th. In addition to routine duties ordinarily performed by policemen, he worked with the Fire Department of the City of Loudon. He made a special trip to talk with the Chief of the Fire Department before going to White's Filling Station on the day of the accident. He often drove his own car while on duty. This he did on the day of the accident.

Whether the City of Loudon is liable for the negligence of Godsey on the occasion of the accident depends to some extent on the principle of respondeat superior, and to some extent of the principle that it was negligent in failing to instruct Godsey in the proper use of the dangerous instrumentality with which he was entrusted—the revolver. If the latter doctrine applies, then under some of

the cases cited by counsel the city would be liable whether Godsey was acting within the scope of his employment at the time of the accidental injury or not. If that doctrine does not apply then the question of liability insofar as the city is concerned depends on whether or not Godsey was acting in the scope of his employment or in the line of duty at the time of the accident.

Plaintiff claims that Godsey was on duty 24 hours a day and Godsey testified that he so understood. We think this claim is unrealistic. Godsey may have been subject to call 24 hours a day but he obviously could not be on duty every hour of the day and night. He would not be on duty when he was asleep in bed—nor would he be on duty when he did the many personal things which are a part of the lives of all people. A person can not work or be on duty in the strict sense 24 hours a day, day in and day out. It is not possible.

Viewed in this light, a serious question is raised whether he was really on duty when he indulged in the unfortunate horseplay with his friend. He was not on his regular tour of duty. This had concluded shortly after 8:00 a. m. It is true he was returning from discussing a matter with the Chief of the Fire Department but this conference had also concluded. He was ostensibly on his way home. He was under no orders at the time and there was nothing to prevent his doing as he pleased until eleven that night, or until he received a call for some particular duty from his superior.

This flexible and loose working arrangement raises serious doubt in the Court's mind whether he was actually on duty at the time, and the Court finds that he was not.

We come now to questions arising from the use of a dangerous instrumentality. Plaintiff says that the pistol which the city permitted Godsey to carry on all occasions was a dangerous instrumentality and that the city is liable for injuries to him at the hands of Godsey, even though Godsey was not acting within the scope of his authority at the time of the accident.

The reasoning of the courts in fixing liability against an employer for wrongs of agents committed outside of the scope of their authority is that the employer owes a duty to the public to select agents who will handle dangerous instrumentalities with extra precaution and that if the agent fails to exercise care in the use of such instrumentality and an injury results, whether the agent is acting within or without his line of duty, the employer is liable. In support of this theory plaintiff has cited language from general legal works.

In addition he has cited excerpts from opinions of a few courts other than Tennessee which purport to support the contention that an employer may be liable under certain circumstances where the agent goes beyond the scope of his employment and injures a third party in the use of the dangerous instrumentality. An examination of these cases discloses that in each instance, where the employer was held for the negligence of the agent, the latter was engaged in the furtherance of the employer's business at the time he stepped beyond the line of duty. A typical case of this character is Lindh v. Protective Motor Service Co., 310 Pa. 1, 164 A. 605, wherein the employee of defendant was wearing a revolver while he gathered up specie boxes from a financial institution. He carried a revolver which was not securely strapped in its holster and the hammer of which was not on an empty cylinder. In stooping over, the revolver slipped out of the holster and discharged, killing the deceased. The employer was held liable. Liability was found also in Wiley v. Pere Marquette Ry. Co., 235 Mich. 279, 209 N.W. 59.

Another example is found in Terry v. Burford, 131 Tenn. 451, 175 S.W. 538, L.R.A.1915F, 714, a Tennessee case, where an untrained special officer of private employers used excessive force in apprehending a suspicious character. The Court in restoring a judgment against

the employers said employers of such special officer will be held to a strict degree of accountability for the acts of such agent in their service.

There is a line of cases holding that where a merchant sells a firearm to a child of tender age and an injury results to a third party from the negligent acts of the child, the merchant is liable.

Another instance is found in the case of Levitan v. Banniza, 34 Tenn.App. 176, 236 S.W.2d 90, where a merchant selling firearms carelessly placed one in the hands of a customer with the implicit understanding that the gun was not loaded when, as a matter of fact it was loaded, and an injury resulted to a third party. Such negligence on the part of a merchant was a basis for liability.

Tennessee and other courts are firmly committed to the principle that a railroad employee in charge of a railroad engine or train—which the courts have classified as a dangerous instrumentality—is liable for their negligent use if the carrier injures a third party whether the use was within or without the scope of the employment of the employee. I. C. R. R. Co. v. Toombs, 6 Tenn.Civ.App. 293, wherein a whistle was blown unnecessarily simply to frighten some horses. Pittsburgh C. & St. L. Ry. Co., v. Shields, 47 Ohio St., 387, 24 N.E. 658, 8 L.R.A. 464, wherein some railroad torpedoes were placed on a track as a caprice to frighten some ladies.

We have neither found nor have been cited to any Tennessee case which holds that officers of a municipality entrusted with pistols who cause injuries to third parties by the negligent or prankish use of such pistols while acting beyond the scope of their authority, makes the municipality liable under such circumstances. The courts have not made the handling of pistols by officers of a municipality analogous to the handling of instrumentalities such as dangerous animals or railroad engines.

■ The rulings of the Tennessee courts to the effect that a sheriff of a county is not liable to a third party for the negligent acts of his deputy sheriff while acting beyond the scope of his authority strongly indicate that the rule in Tennessee is that a municipality will not be liable for the negligent acts of officers in handlings pistols when the officer is acting beyond the scope of his employment. Ivy v. Osborne, 152 Tenn. 470, 279 S.W. 384. In the only case the Court has found in which the Court even intimated that there was liability on the part of a municipality for acts of an officer completely outside the scope of his authority, the facts tended to prove that the Commissioner of Police had previous knowledge of derelictions on the part of the officer and nevertheless retained him on the force. McCrink v. City of New York, 296 N.Y. 99, 71 N.E.2d 419. In this case we have found that there was no evidence which would put the City of Loudon upon notice of any reckless tendencies on the part of Godsey. We conclude that the City of Loudon is not liable for this act of Godsey's.

■■ On the other hand we think the evidence clearly sustains a finding that Godsey was negligent in indulging in this kind of horseplay with a pistol which resulted in plaintiff's injury. It is true that plaintiff was also at fault in provoking Godsey and in reaching toward the gun. His remote contributory negligence has been taken into account in fixing the amount of damages.

■ Plaintiff was 28 years of age at the time of the accident and his net earnings per week were around $65. He was off from work seven weeks due to the injuries, ten days of which were spent in the hospital. His loss of wages amounted to approximately $455. His hospital and medical expenses were in excess of $200. He lost an additional week's work in going to and from the doctors. He was treated by Dr. Harrison, a general practitioner, as well as Dr. Muse, a neurologist. One of the nerves was severed in his right leg which causes anasthesia, or lack of feeling in that leg, and this injury is permanent. The most serious injuries were to his privates, the one to the scrotum having

cleared up but the other is permanent due to scar tissue thereon which is a little less than one-half inch in length. This injury materially affects his sex life. He worked about four weeks at his insurance job after the accident and after termination of that job he worked for the Visking Corporation for about six months at the rate of $81 per week. He left that job and returned to his home in Boston due to illness in his family, where he was and is now employed in a department store. His first work with the store was that of a salesman from which he was promoted to a store detective at a wage of $65 per week. Prior to the accident he was in good health and a physically strong man. His out of pocket expenses proximately caused by the accidental injuries amounted to between $700 and $800.

Judgment is rendered against defendant Godsey in the amount of $3,500.

Let an order be prepared in conformity with the views herein expressed.