854 P.2d 801 (1993)
The PEOPLE of the State of Colorado, Petitioner, in the Interest of J.J.C., A Juvenile and Concerning, W.C., Respondent.
No. 92SC254.
Supreme Court of Colorado, En Banc.
July 12, 1993.
*802 Robert R. Gallagher, Jr., Dist. Atty., James C. Sell, Chief Deputy Dist. Atty., Patryce S. Engel, Intern Deputy Dist. Atty., Englewood, for petitioner.
Andrea Beckman, Englewood, for respondent.
Karen Johnson, Littleton, Guardian Ad Litem.
Justice SCOTT delivered the Opinion of the Court.
We granted the People's request for certiorari review in order to examine a court of appeals decision upholding the judgment of the district court, sitting as a juvenile court, which held that resisting detainment by a privately employed security guard, who is also a uniformed off-duty peace officer, does not constitute the commission of an act which would be deemed the crime of "resisting arrest" within the meaning of section 18-8-103(1)(a), 8B C.R.S. (1986) if committed by an adult. People in Interest of J.J.C., 835 P.2d 553 (Colo.App.1992). Because there was no evidence presented to show that the off-duty peace officer in question was acting in the regular course of his assigned duties, we affirm the court of appeals decision.

I.
On March 9, 1990, J.J.C., a juvenile, paid the admission fee and was allowed to enter Skate City, an indoor skating rink in Aurora, Colorado. However, after an employee identified J.J.C. as the same person who, during the previous week, was suspended from the use of the rink for thirty days for misconduct, the rink's manager refunded the admission fee and requested that J.J.C. leave the skating rink. Upon the manager's request, J.J.C. left the skating rink premises.[1]
A short while later, a number of skates were discovered missing and the manager went outside to investigate, accompanied by William F. Wehmer (Wehmer), the security guard working at the rink that evening. Wehmer was also employed as an Aurora Police Department detective at the time and, although off-duty from the Department, was in full police uniform. While returning to the front of the building, the manager observed J.J.C. near the rink's parking lot, but off the Skate City premises. The manager pointed J.J.C. out to Wehmer, and asked Wehmer to accompany him to the adjacent lot so that Wehmer could serve as a witness while the manager issued a warning that J.J.C. was not to return to Skate City.
The manager, accompanied by Wehmer, confronted J.J.C. and told him that he was indefinitely barred from the skating rink. In response, J.J.C. began using obscene language and stated that because he was not on Skate City property, he did not have *803 to leave. Believing J.J.C. was acting "belligerent," Wehmer "grabbed" him and "told him he was under arrest." J.J.C. fell to the ground and began "rolling around" in an apparent attempt to prevent Wehmer from handcuffing him.
While attempting to secure J.J.C., Wehmer sent the manager back to Skate City to "call for a police officer." Before an on-duty police officer arrived, however, J.J.C. freed himself from Wehmer's grasp and ran away. Shortly thereafter, an on-duty officer, accompanied by Wehmer, arrested J.J.C.
Based on the events of that evening, J.J.C. was charged under a delinquency petition with having committed acts that, if committed by an adult, would constitute the following three offenses: third-degree criminal trespass in violation of section 18-4-504, 8B C.R.S. (1986), a class one petty offense; disorderly conduct in violation of section 18-9-106(1)(b), 8B C.R.S. (1986), a class one petty offense; and resisting arrest in violation of section 18-8-103(1)(a), 8B C.R.S. (1986), a class two misdemeanor.[2]
At the juvenile proceeding, J.J.C. argued, inter alia, that because Wehmer was off-duty at the time of the attempted arrest, it was "questionable whether or not [he] was acting under color of his official authority," especially in light of the evidence offered by Wehmer's own testimony that he instructed the manager to call on-duty Aurora police officers to effect the arrest. J.J.C. thus maintained that the "resisting arrest" charge should be dismissed. The juvenile court agreed with J.J.C. and in dismissing the "resisting arrest" charge, found that the evidence adduced at trial was insufficient to show, beyond a reasonable doubt, that Wehmer was acting "under color of his official authority" at the time of the attempted arrest, as required by section 18-8-103(1)(a), the so-called "resisting arrest" statute. As that court explained,
[t]he testimony was that [Wehmer] was off-duty, was acting in a private employment capacity, that he was not acting in the regular course of his assigned duties, and I believe, therefore, based on [the language of section 18-8-103(1)(a) ], that the burden of proof has not been sustained beyond a reasonable doubt on Count Three, resisting arrest.
(Brackets added.)
The People appealed the juvenile court's dismissal of the charge against J.J.C. for "resisting arrest" to the court of appeals, and that court affirmed the juvenile court's ruling, based on a similar construction of the resisting arrest statute. Specifically, the court of appeals relied on language of the resisting arrest statute which expressly limits its application to those situations in which a police officer is attempting an arrest "while acting under color of his official authority." J.J.C., 835 P.2d at 555. The court of appeals reasoned that Wehmer
was not acting in his capacity as a police officer for the Aurora Police Department at the time he attempted to effect an arrest. The Aurora police department [sic] had not assigned him to function as a guard for Skate City, nor did his regularly assigned duties for the Aurora Police Department include any at the skating arena. Thus, the off-duty officer, in attempting to make an arrest, was acting solely in his capacity as a citizen whose job title was that of a security guard.
J.J.C., 835 P.2d at 555-56. Thus the court of appeals held that one who resists an arrest by an off-duty officer has not resisted any official authority, and hence cannot be guilty of the crime of resisting arrest.
The People subsequently sought review by this court of the court of appeals decision, arguing that Wehmer's efforts to preserve the peace were undertaken "in the course of [his] regularly assigned duties, not those duties empowered to him by a private employer, but by the state," and that therefore Wehmer was acting under *804 color of his official authority when he attempted to arrest J.J.C. The People argue further that because Wehmer was in standard police uniform at the time he attempted to arrest J.J.C., "the public, the juvenile and the world was [sic] on notice that this was an officer of the law."
We granted certiorari to determine first, "whether the court of appeals erred in ruling that an off-duty police officer does not act `under color of his official authority' when making an arrest for misdemeanors or petty offenses committed in his presence," and next, "whether the court of appeals erred in not finding unlawful the resisting of an arrest by an off-duty police officer while in uniform or, if not in uniform, who discloses his identity while acting `under color of his official authority.'"

II.
Section 18-8-103(1), 8B C.R.S. (1986) of the so-called "resisting arrest" statute, provides as follows:
A person commits resisting arrest if he knowingly prevents or attempts to prevent a peace officer, acting under color of his official authority, from effecting an arrest of the actor or another, by:
(a) Using or threatening to use physical force or violence against the peace officer or another; or
(b) Using any other means which creates a substantial risk of causing bodily injury to the peace officer or another.
(Emphasis added.) According to the plain language of subsection (1) of the resisting arrest statute then, where a "peace officer"[3] attempts an arrest while acting "under color of his official authority," and where the factual context satisfies the other conditions of the statute, one who resists such arrest is in violation of the statute. The meaning of the language contained in subsection (1) of the resisting arrest statute, "under color of [the peace officer's] official authority," will thus be dispositive in this case, and as such, interpretation of that language is required to resolve the issues before us.
Because the phrase "under color of official authority" has been defined by the Colorado General Assembly in the resisting arrest statute, we begin our analysis with an examination of that statutory definition. See R.E.N. v. City of Colorado Springs, 823 P.2d 1359 (Colo.1992) (when legislature defines term in statute, rules of statutory construction require that the term be given its statutorily-defined meaning); Indus. Comm'n v. Northwestern Mut. Life Ins. Co., 103 Colo. 550, 88 P.2d 560 (1939) (statutory definitions of terms used in statute control judicial interpretation thereof). Section 18-8-103(2) defines "under color of official authority" as follows:
A peace officer acts "under color of his official authority" when, in the regular course of assigned duties, he is called upon to make, and does make, a judgment in good faith based upon surrounding facts and circumstances that an arrest should be made by him.
(Emphasis added.) It is not disputed that Wehmer's decision to arrest J.J.C. for disorderly conduct was made "in good faith based upon the surrounding facts and circumstances";[4] therefore, only the first clause of the statutory definition of "under color of his official authority" is at issue. We must determine, then, whether Wehmer was acting "in the regular course of assigned duties" at the time he attempted the arrest of J.J.C. while employed as a security guard at the Aurora skating rink.
Although not in the context of a challenge to the state "resisting arrest" statute, we have previously construed statutory language that is similar to "in the regular course of [a peace officer's] assigned *805 duties." In People v. Rael, 198 Colo. 225, 597 P.2d 584 (1979), we were faced with the question as to whether the district court's dismissal of a charge of first-degree assault on a peace officer was proper under section 18-3-202(1)(e), C.R.S. (1973) (now codified at section 18-3; 202(1)(e), 8B, C.R.S. (1986)).[5] In that case, the district court had ruled that the statute which criminalizes assault on a peace officer, but which states that the peace officer who has been assaulted must be "engaged in the performance of his duties" for the assault statute to apply, was inapplicable because the peace officer was not "on-duty" at the time of the assault. Rael, 198 Colo. at 227, 597 P.2d at 585. Setting aside the district court's ruling, we stated that a peace officer may be "engaged in the performance of his duties" so long as "the peace officer performs a duty, service or function merely permitted by law, as well as one mandated by his position as a law enforcement official." Rael, 198 Colo. at 227, 597 P.2d at 586 (emphasis in original). Noting that the peace officer assaulted in Rael was not on duty, we held that the "[a]uthority for performance of the duty, service or function is not limited by the person's status as an on-duty peace officer." Id. Thus, rejecting the rule of thumb applied by the district court, i.e., that the peace officer's on-duty status is determinative in such cases, we then concluded that an off-duty officer's actions may fall within the statutory condition when the officer is attempting to perform an authorized law enforcement function. Rael, 198 Colo. at 227-28, 597 P.2d at 585-86.
Other jurisdictions have similarly recognized that off-duty status is not necessarily a limitation upon the authority of a peace officer. See e.g., State v. Robinson, 379 So.2d 712, 714-15 (Dist.Ct.App.Fla.1980) (the off-duty status of police officer working as security guard at private business is not a limitation upon his right to exercise police authority, and when granted such authority at the discretion of his superior officers such officer was engaged in law enforcement function normally performed on duty); Tapp v. State, 406 N.E.2d 296 (Ind.App.1980) (it is the nature of the acts performed and not whether the police officer is on- or off-duty which determines whether the officer is engaged in the performance of his official duties); State v. Childs, 269 N.W.2d 25, 28 (Minn.1978) (arrest of defendant by police officer who was working during his off-duty hours as security guard for pharmacy was lawful pursuant to authority conferred by shoplifting statute) (per curiam); State v. Palms, 592 S.W.2d 236, 239 (Mo.App.1979) (setting aside a conviction of battery upon a police officer because there was no evidence the victim, a reserve police officer, was assigned to active duty by any police authority); Wood v. State, 486 S.W.2d 771 (Tex.Ct.App.1972) (private employment which is administratively controlled by police department does not limit officer's ability to discharge police authority even though off-duty).
While it is arguable here that, as in Rael, Wehmer was attempting to perform a law enforcement function, viz., to arrest someone committing a crime when he ventured to arrest J.J.C. for disorderly conduct, *806 there is no evidence in the record before us to show any "authority for performance of the duty, service or function," Rael, 198 Colo. at 227, 597 P.2d at 586, regarding the arrest of J.J.C. while Wehmer was employed as a Skate City security guard.[6] Rather, the evidence shows only that Wehmer was off-duty and acting in the capacity of a security guard under the control of his private employer at the time of the attempted arrest; the record is deficient as to whether the Aurora Police Department had assigned Wehmer to function as a guard for Skate City, or whether Wehmer's "regularly assigned duties" for the Aurora Police Department included any secondary or other employment as a security guard at the skating rink.
In addition to our case law which restricts an off-duty peace officer's official authority to those duties mandated by virtue of the peace officer's position as a law enforcement official, the Aurora Police Department Directives Manual (the "Manual")[7] similarly restricts the scope of an Aurora peace officer's authority while off-duty. In the section entitled "Secondary and Additional Employment," the police manual defines secondary employment as "[o]ff-duty employment requiring the use or potential use of police authority or expertise," and goes on to state that the "Chief of Police shall have complete charge of all secondary employment." Aurora Police Manual § 8.16.1(a). Secondary employment is defined in the Manual as "[o]ff duty employment requiring the use or potential use of police authority or expertise." Manual § 8.16.1(a-b). Secondary employment is heavily regulated by the department and in order to participate in secondary employment a peace officer is required to complete an authorization form which must then be approved by the Aurora Chief of Police.[8] Furthermore, for civil liability purposes, the Manual indicates the City may or may not "defend or pay a monetary judgment," depending upon whether the actions performed by the officer during secondary employment are within the scope of the officer's employment. Id. at § 8.16.8.
Whether Wehmer had been authorized by the Aurora Chief of Police, pursuant to the rules of the Aurora Police Department, to participate in secondary employment at Skate City is simply unknown. As such, the People presented no evidence to show that Wehmer was "acting in the regular *807 course of [his] assigned duties" when he attempted the arrest of J.J.C.

III.
In summary, the record does not support a showing that while acting as a security guard Wehmer attempted the arrest of J.J.C. pursuant to any official authority conferred on him as an off-duty Aurora police officer. Thus, we agree with the court of appeals that Wehmer may not have been "engaged in the performance of [his] regularly assigned duties," and hence was not, beyond a reasonable doubt, acting "under color of his official authority," as that term is contemplated by section 18-8-103, 8B C.R.S. (1986), when he attempted the arrest of J.J.C. for disorderly conduct. However, insofar as the court of appeals opinion may be understood to suggest an off-duty peace officer serving a private employer may never act "under color of his official authority," we disapprove of such a reading. Accordingly, to the extent it is not inconsistent with the opinion herein, the court of appeals decision in People in Interest of J.J.C., 835 P.2d 553 (Colo.App.1992), is affirmed.
NOTES
[1] Although the court of appeals opinion states "J.J.C. refused to leave the premises," 835 P.2d at 554, the juvenile court specifically found that J.J.C. left the building and the premises at the manager's request.
[2] Based on the testimony of the Skate City manager and Officer Wehmer, the juvenile court found that the People did not sustain their burden of proof that J.J.C. committed the acts of third-degree criminal trespass or disorderly conduct. The People did not appeal the juvenile court's dismissal of the trespass or disorderly conduct charges; however, in the instant case the People seek review of the juvenile court's dismissal of the resisting arrest charge.
[3] A "peace officer" is defined by § 18-8-103(3) as "a peace officer in uniform or, if out of uniform, one who has identified himself by exhibiting his credentials as such peace officer to the person whose arrest is attempted." The statutory definition does not indicate whether a peace officer retains that status while off-duty.
[4] Section 18-9-106(1)(b), 8B C.R.S. (1986) provides that:

Disorderly conduct. (1) A person commits disorderly conduct if he intentionally, knowingly, or recklessly:
....
(b) Abuses or threatens a person in a public place in an obviously offensive manner[.]
[5] Section 18-3-202 defines assault on a peace officer as follows:

(1) A person commits the crime of assault in the first degree if:
....
(e) With intent to cause serious bodily injury upon the person of a peace officer or fireman, he threatens with a deadly weapon a peace officer or fireman engaged in the performance of his duties, and the offender knows or reasonably should know that the victim is a peace officer or fireman acting in the performance of his duties....
Section 18-3-201(2) defines "[p]eace officer ... engaged in the performance of his duties" as
... a peace officer or fireman who is engaged or acting in ... the performance of any duty, service, or function imposed, authorized, required, or permitted by law to be performed by a peace officer or fireman, whether or not the peace officer or fireman is within the territorial limits of his jurisdiction, if the peace officer or fireman is in uniform; or the person committing an assault upon or offense against or otherwise acting toward such peace officer or fireman knows or reasonably should know that the victim is a peace officer or fireman.
Like resisting arrest, an assault on a peace officer is a criminal violation, and as such, each statutory element of the violation must be proved beyond a reasonable doubt.
[6] We are mindful of a distinction of some significance between the resisting arrest and the assault on a peace officer statutes. The language of the resisting arrest statute requires that the peace officer in question be "engaged in the performance of regularly assigned duties," as contrasted with the assault on a peace officer statutory language that we construed in Rael, which requires either that the peace officer be "engaged in the performance of his duties," or, as defined in § 18-3-201(2), that "the person committing an assault upon ... such peace officer... knows or reasonably should know that the victim is a peace officer." This distinction reinforces our position that for the resisting arrest language to apply, the peace officer must be either on-duty or acting under color of official authority for the performance of a police service or function.
[7] Although the Aurora Police Department Directives Manual was not introduced at trial and thus is not part of the record before us, we may take judicial notice of an adjudicative fact when the fact is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," whether requested or not. See C.R.E. 201(a-c). See also Dallasta v. Department of Highways, 153 Colo. 519, 387 P.2d 25 (1963) (courts may take judicial notice of city charters).
[8] The Manual identifies two types of off-duty employment, "secondary employment" and "additional employment." Secondary employment, which is described as "a privilege, not a right" may be denied by the Chief of Police and such employment may not be engaged in "outside the city limits." While under secondary employment, officers are "subject to all Rules, Directives and Standard Operating Procedures of the Aurora Police Department, just as if [they] were on duty" and are "required to complete all necessary police reports" incurred while engaged in secondary employment. § 8.16.3. Moreover, secondary employers are required to complete and submit to the department certain forms prior to employment. § 8.16.4. Under the Aurora Police Department policies, secondary employers are also required to "[e]mploy sufficient numbers of officers to ensure adequate safety measures" and must "[r]eport misconduct" to the department. Id. Additional employment is defined as "non-police work," § 8.16.6, or "[o]ff-duty employment not involving the use of police authority or expertise." § 8.16.1(b).