IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE

FILED

October 15, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

JAMENSENA WHITE, ET AL.,          ) C/A NO. 03A01-9904-CV-00145
                                  )
        Plaintiffs-Appellants,    ) KNOX CIRCUIT
                                  )
vs.                               ) HON. DALE C. WORKMAN,
                                  ) JUDGE
REVCO DISCOUNT DRUG               )
CENTERS, INC.,                    ) AFFIRMED
                                  ) AND
        Defendant-Appellee.       ) REMANDED


A. PHILIP LOMONACO, Knoxville, for Plaintiffs-Appellants.

BARRY K. MAXWELL and RONALD T. HILL, EGERTON, McAFEE,
ARMISTEAD & DAVIS, P.C., Knoxville, for Defendant-Appellee.


**O P I N I O N**


                                        Franks, J.


        Plaintiffs' complaint named as defendants, the City of Knoxville, the

Chief of Police of Knoxville, six Police Officers, Knoxville Community Development

Corporation, and Revco Discount Drug Centers, Inc., (Revco). The complaint alleged

that the officers acted negligently in their use of deadly force against the deceased,

and are therefore liable for his pain, suffering and death. Defendant Revco filed a

Motion to Dismiss on the grounds that the Complaint failed to state a claim against it.

The Trial Judge granted judgment, and the action was dismissed as to Revco, and an

appeal has been properly perfected from that dismissal.

        Defendant Boone is a police officer for the City of Knoxville, and while

off duty, works as a security guard for the Revco drug store located on University

Avenue in Knoxville. On May 4, 1997, the deceased entered the Revco store and allegedly caused a disturbance. Boone, while off duty as a police officer and while working as a security guard for Revco, issued deceased a citation for disorderly conduct, and warned deceased to stay out of the store.

On June 4, 1997, Boone while working as a security guard at Revco was informed by the store manager, James Lavin, that the deceased had returned to the store. It is alleged that while under the direction and control of Revco and within the scope of his employment there, Boone checked with the Knoxville Police Department and learned that deceased did not report to jail for booking on May 19, 1997, as ordered under the citation. As a result of his failure to appear, a bench warrant had been issued for deceased's arrest. Boone then went to the deceased's apartment "with the consent, condonance, and direction of James Lavin . . . to serve the bench warrant to prevent Woodfin [deceased] from ever returning to Revco and to punish Woodfin for disregarding Revco's no trespass order." Boone contacted several other police officers, who are named as Defendants, to assist him in arresting the deceased. At the deceased's premises, Boone and the other officers demanded that the deceased come out of his apartment. He refused and told Boone and the officers that he would shoot them if they entered his apartment, and closed and locked the door to his apartment.

Boone and the other officers contacted deceased's landlord, requesting that they send a maintenance person with a key so that they could gain access to the apartment. Prior to the arrival of the key, Boone was called by Revco to issue a citation to a shoplifter. Boone later returned to the apartment where he was given the key, and proceeded to unlock and open the back door of deceased's apartment. Once inside, Boone and the officers realized that deceased had locked himself in the bathroom. The officers ordered him out of the bathroom, but he refused and told

2

them that he had a shotgun. Defendant Maxwell kicked the bathroom door open and fired upon deceased, killing him.

Plaintiffs allege that Boone used "excessive force, unlawful battery, and assisted in causing the wrongful death of Woodfin [deceased]." They assert that Revco is liable as the employer of Boone under the doctrine of respondeat superior.

Our review of the granting of a Tennessee Rule of Civil Procedure 12.02(6), motion to dismiss for failure to state a claim is a question of law. Accordingly, the standard of review is *de novo* with no presumption of correctness in favor of the trial court's action. T.R.A.P. Rule 13(d); *Owens v. Truckstops of America*, 915 S.W.2d 420 (Tenn.1996). When considering a motion to dismiss, we are required to construe the complaint liberally in favor of the plaintiff, taking all allegations of fact as true, and deny the motion unless it appears the plaintiff can prove no set of facts in support of her claim that would entitle the plaintiff to relief. *Stein v. Davidson Hotel Co.*, 945 S.W.2d 714 (Tenn. 1997).

Generally, to hold an employer liable under the doctrine of respondeat superior, the tort victim must prove that the person who caused the injury was an employee, that the employee was on the employer's business, and that the employee was acting within the "scope of employment" when the injury occurred. *Tennessee Farmer Mut. Ins. Co. v. American Mut. Liability Ins. Co.*, 840 S.W.2d 933 (Tenn.App. 1992). However, an employer may also be liable for acts of his employee that are outside the scope of employment if done at the direction of the employer. *Kinnard v. Rock City Const. Co.*, 286 S.W.2d 352 (Tenn.App. 1955).

The complaint alleges that Boone was an "employee" of Revco at all relevant times and was acting under the direction and control of Revco. Revco argues that Boone was acting in his official capacity as a police officer at the time of the incident, and not as an employee of Revco. It bases this assertion on the theory

3

that a police officer retains the right to make an arrest at any time, even when off duty. *See* Knoxville City Code, §19-29. However, even though a police officer retains his status as a police officer at all times, not all of his actions are necessarily within the scope of his duty as an officer.

In *Nishan v. Godsey*, 166 F.Supp. 6 (E.D. Tenn. 1958), the Court held that although the officer was technically "on-duty" 24 hours a day, the City was not responsible when the officer accidentally discharged his revolver after he had finished his shift for the day and was at a gas station filling his personal motor vehicle. The Court reasoned that at the time of the incident, the officer was not acting within the scope of his duty as a police officer.

A police officer not acting within his official duties is liable for his private actions as is any other private citizen. *See People in Interest of J.J.C.*, 835 P.2d 553, 555 (Col.App.1992) (affirmed in *People in Interest of J.J.C.* 854 P.2d 802 (Col. 1993)). It follows that if the police officer was acting for a private employer and not in his official capacity as a police officer, that employer may be held liable if the requirements for liability under the doctrine of respondeat superior are met. However, there is a significant split of authority among the states as to the role of off-duty police officers while working as private security guards.

The majority holds that police officers retain their official status as a policeman when employed privately during off-duty hours, because a police officer's duties are continual. *See Hutto v. Alabama*, 304 So.2d 29 (Ala.Crim.App. 1974); *Carr v. State*, 335 S.E.2d 622 (Ga.App. 1985); *Monroe v. State*, 465 S.W.2d 757 (Tex.Crim.App. 1971). Public policy considerations, including the notion that authority placed in security guards furthers the objective of deterring unlawful acts, is also a deciding factor for many courts. *Tapp v. State*, 406 N.E.2d 296 (Ill.App. 1980); *State v. Wilen*, 539 N.W.2d 650 (Neb.App. 1995).

4

On the other hand, some courts have refused to accept this principle, and have held that a police officer's duties end when the officer accepts private employment and/or is paid by an entity other than the city or police department. *See Cervantez v. J. C. Penny Co.*, 595 P.2d 975 (Cal. 1979),, and *Stewart v. State*, 527 P.2d 22 (Okla.Crim.App. 1974).

The practice of municipalities allowing police officers, while off-duty and in uniform, to serve as peace-keepers in private establishments open to the general public, is generally considered to be in the public interest. In *State v. Wilen*, 539 N.W.2d 650, 660 (Neb.App. 1995); the Court observed:

> The presence of uniformed officers in places susceptible to breaches of the peace deters unlawful acts and conduct by patrons of those places. The public knows the uniform and the badge stand for the authority of the government. The public generally knows that law enforcement officers have the duty to serve and protect them at all times. A holding that law enforcement officers have no official duty to maintain the peace under these circumstances would be in contravention of the policy we seek to further.

*See also State v. Brown*, 672 P.2d 1268 (Wash.App. 1983); *Duncan v. State*, 294 S.E.2d 365 (Ga.App. 1982).

However, as some courts have acknowledged, not all acts by off-duty police officers fall within the scope of their public duty. *See Brandon v. Allen*, 516 F.Supp. 1355 (W.D. Tenn. 1981); *State v. Wilen*, 539 N.W.2d 650, 659 (Neb.App. 1995). These courts have adopted a balancing test in which they examine the specific acts and circumstances of the case to determine whether the officer was acting in his official capacity of serving the public or was acting in the interest of his private employer.

In the case of *State v. Kurtz*, 278 P.2d 406 (Ariz. 1954), the Court was faced with the question of whether off-duty officers engaged in private employment lose their official status to the extent that their acts necessarily become those of private citizens. The Court asked whether the officers were "acting in 'vindication of

5

public right and justice' or were they merely performing acts of service to their private employer?" The Court cited the following language from *Neallus v. Hutchinson Amusement Co.*, 139 A. 671 (Me. 1927).

> The decisions hold generally that such officers act sometimes as officers and sometimes as servants of the person employing them; that they are not, although paid for all their services by the persons at whose instance they are appointed, servants of such persons in respect to all the acts they perform by virtue of their offices but only in respect to services rendered to these persons, such as protecting and preserving their property or maintaining order on their premises; that the line of distinction, sometimes hard to recognize under the circumstances of a given case, marks the point at which the act ceases to be one of service to the employer and becomes one of vindication of public right and justice, of apprehension or punishment of a wrongdoers, not for the injury done to the employer but to the public at large.

In *Kurtz*, the Court found that the officers were acting in their official capacity in controlling a disturbance outside the ballroom where they were working as security guards. The Court in *State v. Wilen*, 539 N.W.2d 650 (Neb.App.1995) adopted a similar test. In determining whether an off-duty officer is engaged in official duties, the Court examined the nature of the secondary employment and the nature of the acts being performed at the time of the incident, and noted:

> [W]e examine (1) the specific nature, extent, and circumstances of the secondary employment; (2) the manner in which such secondary employment is regarded by the employer and employee; and (3) the nature of the acts the peace officer . . . is performing at the time in question.

The Court recognized that "certain off-duty activities are unrelated to police officer status or do not resemble the police officer's obligation to keep the peace, and such off-duty conduct is not viewed as engaging in the performance of official duties." The court decided that a police officer retains her police officer status even while privately employed, unless it is clear from the nature of the officer's activities that she is "acting exclusively in a private capacity or is engaging in his or her own private business."

6

We adopt the balancing test set forth in *Kurtz* and *Wilen*. In this case, while Revco initiated the issuance of the citation, the failure of deceased to appear in court resulted in a warrant being issued by the Court. Serving the Court's warrant was a vindication of a public right and clearly a policeman's duty and function as a police officer. We conclude that the Trial Judge appropriately dismissed this suit as to the police officer's private employer.

We affirm the judgment of the Trial Court and remand with cost of the appeal assessed to the appellants.

        _____
        Herschel P. Franks, J.

CONCUR:

_____
Charles D. Susano, Jr., J.

_____
D. Michael Swiney, J.