LUIS PÉREZ VÁZQUEZ, ETC., ET AL., Plaintiffs and Appellants, *v.* HEIRS OF JUAN AMILL RODRÍGUEZ ET AL., Defendants and Appellees.

No. R-62-9.      Decided October 28, 1963.

*H. Lugo Bougal* and *Carlos Irizarry Yunqué* for appellants.
*José N. Dapena Laguna* and *Charles Cuprill* for appellees.

Division composed of Mr. Justice Pérez Pimentel, as Chief Judge of Division, Mr. Justice Rigau, and Mr. Justice Dávila.

Mr. Justice Rigau delivered the opinion of the Court.

The conflict in the evidence turns on a single substantial point which we shall timely point out. Defendants' farm is devoted in part to the cultivation of sugarcane. As an incidental element of their agricultural enterprise during the harvesting of cane defendants operate a crane which is used to load the cane from the oxcart, which hauls it from the plantation, into the trucks which deliver it to the mill. On the day of the events at about noontime the workers finished the harvesting of cane at defendants' plantation which is near the highway from Yauco to Lares, and after lunchtime they were ready to dismantle the crane to take it to another place. One of said employees was Alfredo Pacheco, to whom the child Andrés Pérez, eight years old, brought his lunch to work. Minor Andrés and his family live, or lived at that

time, near Alfredo Pacheco. As a rule, after having his lunch
at his house, the child went to Pacheco's house, where the
latter's wife gave him a picnic pack with the lunch and
Andrés took it to Pacheco's work. He paid the child ten cents
for the service.

The day of the occurrence, Andrés, accompanied by his
twelve-year-old brother Luis, brought Pacheco's lunch. Pa-
checo and the other laborers which were working there, left
the plantation when the whistle blew at noon, at which time
it is sounded in that neighborhood by a plant of the Puerto
Rico Water Resources Authority, and went to a nearby high-
way, where they had their lunch by the roadside and under
the shade of the trees. At the time of resuming their work
the laborers went back to defendants' land and, as we said,
began to dismantle the crane. Here we come to the conflict
in the evidence. Pacheco testifies that when he saw that the
boys Andrés and Luis were going to the place where the
crane was standing, he told them that it was dangerous
there, that he sent them away from there, and that they
went away. Witness Francisco López Ruiz testified to the
same effect. On the contrary, Luis, Andrés' brother, testified
that after lunch they took water to the laborers and then
they went to rest under an iron cart, one of those used to
carry cane, which was there near the crane. According to
the version to which the trial court gave credit, Pacheco
ordered the boys to go away from that place because it was
dangerous and they went away, but while the laborers were
dismantling the crane, the boys came back without being
seen and slipped under the iron cart which was there.

Coming back to the uncontroverted facts, the boys were
watching the dismantling of the crane from underneath the
iron cart. When the work was almost finished a cable or
guy of the kind attached to a pole or post became loose and
it was evident that the pole would fall. The laborers gave

the alarm so that everyone should take shelter. The boys, instead of staying under the iron cart where they were protected and safe, started to run and the pole as it fell down reached Andrés and struck him on the head, killing him. As soon as the boy fell down Alfredo Pacheco picked him up and carrying him on his back ran toward the highway, stopped the first vehicle which passed by and took him to the Municipal Hospital. Unfortunately, the blow had been fatal.

Plaintiffs are the parents of minor Andrés Pérez and his seven brothers and sisters. The parents request compensation of $50,000 and the brothers and sisters three items of $20,000, two of $10,000, and two of $5,000, making a total of $140,000. The Superior Court, Ponce Part, after making the pertinent findings of fact and conclusions of law dismissed the complaint, with costs, and imposed on plaintiffs $1,000 for attorney's fees. Plaintiffs-appellants assign three errors. The first two challenge the weighing of the evidence made by the Superior Court and the third one challenges the order to pay attorney's fees.

■ We timely ·issued the writ of review and we have carefully examined the transcript of the evidence and have given due attention to the briefs of the parties. The evidence is clear, and except for what was previously indicated, there is no conflict of importance therein. The trial court settled the conflict as to whether the boys stayed at the place where the laborers were dismantling the crane with their consent or whether, on the contrary, they were sent away from the place and then returned without being seen against the instructions which they had received. Both versions are entirely plausible and since the findings of the lower court are supported by the evidence, and the record does not show that said finding is clearly erroneous, we shall not disturb

it. Rule 43.1 of the Rules of Civil Procedure; *Sánchez* v. *Soler*, 87 P.R.R. 409 (1963).

██ Plaintiffs argue in their brief that even considering the boys as trespassers, as we must consider them in the light of the evidence believed by the lower court and accepted by us, the doctrine of attractive nuisance would be applicable. As it is known, the general rule is to the effect that a property owner owes no legal duty to a trespasser whose presence is not reasonably anticipated, other than to refrain from inflicting wilful injury or to take reasonable precautions after his presence becomes known. *Díaz* v. *Central Lafayette*, 66 P.R.R. 780, 783 (1947); *Ramos* v. *Sucesión J. Serrallés*, 51 P.R.R. 332, 341 (1937); Restatement, Torts, 901, § 333; Prosser, Torts 432 *et seq.*, § 76. In regard to children of tender age the courts, which have adopted the doctrine of attractive nuisance, have held that where a person maintains in his own, or in another's property, or at a public place a dangerous condition capable of attracting children of tender years, that person should take all due precaution commensurate with ordinary prudence to save harmless the children that come or may come to the place of danger. *Ramos* v. *Sucesión J. Serrallés, supra* at 335. This doctrine mitigates the application of the general rule on trespassers stated before, bearing in mind that children of tender age generally do not realize the dangers around them. In *Rivera* v. *Porto Rico Drug Co.*, 32 P.R.R. 470 (1923), we accepted said doctrine in this jurisdiction and ratified said acceptance in *Ramos* v. *Sucesión J. Serrallés, supra*. As we said in *Díaz* v. *Central Lafayette, supra* at 781, the doctrine of attractive nuisance "requires property owners to take affirmative precautions to protect children who, even though they are trespassers, do not realize the dangers to which they are subjecting themselves. But opposed to this doctrine, is the policy against unduly interfering with or placing unreasonably

burdensome restrictions on the use of property. We therefore have the interest of society in preserving the safety of children as against the legitimate interest of property owners to use their own property with reasonable freedom. The effort to determine which of these two competing considerations will prevail in a given case has engendered considerable litigation."

■ In *Díaz v. Central Lafayette, supra,* and in *Vargas v. Water Resources Authority,* 86 P.R.R. 99 (1962), we set forth the essential requirements for the application of said doctrine, adopting those stated in Restatement, Torts, 920, § 339. Since said requirements are brief, instead of paraphrasing them we prefer to quote them for the sake of accuracy:

"A possessor of land is subject to liability for bodily harm to young children trespassing thereon caused by a structure or other artificial condition which he maintains upon the land, if

(a) the place where the condition is maintained is one upon which the possessor knows or should know that such children are likely to trespass, and

(b) the condition is one of which the possessor knows or should know and which he realizes or should realize as involving an unreasonable risk of death or serious bodily harm to such children, and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling in it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition is slight as compared to the risk to young children involved therein."[1]

---

[1] In *Restatement, Torts, Second* (Tent. Draft No. 5, April 8, 1960), some amendments are proposed to that section which do not significantly alter its meaning and clause (e), which was unaccountably omitted in the original version, is added and reads as follows:

"(e) The possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children."

We do not have in the case at bar those conditions which would make the doctrine of attractive nuisance applicable. In the first place, there was no evidence to lead the court to conclude that the place where defendants were operating the crane was one which it was known or should have been known to the defendants to be apt to be trespassed by the children. The operation of dismantling the crane was done in that place only once or twice a year; the place is not commonly trespassed by children; it is not crossed by any path and there are no dwellings or schools near it.

In the second place, "the condition" involved, the dismantling of the crane being sporadic and there being no reason to believe that there would be children around while it was carried out does not involve an unreasonable risk for children. Requirement (c) is met, since it cannot be expected that an eight-year-old child like the deceased minor would understand the risk which said operation involved. The same thing probably might not be said of his twelve-year-old brother Luis. Naturally, this condition alone, isolated from the other circumstances, is not sufficient to hold defendants liable.

Requirement (d) is not complied with in this case either for we know the use, and more than the use, the necessity that sugarcane producers have for those cranes. Finally, it was not proved that defendants failed to exercise the reasonable care required by law. The employees sent the children away from the place, they warned them of the danger; the laborers were skilled in the work they were carrying out, they had performed it for several years, and the equipment was regularly inspected by inspectors of the State Insurance Fund. For cases in which a decision was rendered in favor of defendants because the prejudiced children were duly warned of the danger, see *Niernberg* v. *Gavin*, 224 P.2d 215 (1950); *Jarvis* v. *Howard*, 219 S.W.2d 958 (1949); *McCulley* v. *Cherokee Amusement Co.*, 184 S.W.2d 170 (1944);

*Schock* v. *Ringling Bros.*, 105 P.2d 838 (1940); *Galbraith-Foxworth Lumber Co.* v. *Gerneth*, 66 S.W.2d 471 (1933); *Hernández* v. *Santiago*, 293 Pac. 875 (1930); *Lucas* v. *Hammond*, 116 So. 536 (1928); *Case Threshing Machine Co.* v. *Burns*, 86 S.W. 65 (1905); *Carey* v. *Kansas City*, 86 S.W. 438 (1905).

■ This case not being one of attractive nuisance, it might be considered a case of liability for ordinary negligence, which was neither proved nor do we believe it exists. In cases of liability toward a trespasser the fact that the trespasser is a child is undoubtedly one of the elements to be considered in determining the liability or nonliability of the defendant, but that fact alone does not entail absolute liability. Thus, for example, the aforecited *Restatement, Torts, Second* (Tent. Draft No. 5), in commenting on clause (e) of § 339 copied in footnote 1, explains that said clause is included to make it clear that it is only negligence liability, and that the defendant is not liable if he has used reasonable care. The mere fact that an accident occurs does not necessarily entail civil liability. Prosser, *Trespassing Children*, 47 Cal. L. Rev. 427, 432 (1959); Green, *Landowner* v. *Intruder: Intruder* v. *Landowner: Basis of Responsibility in Tort*, 21 Mich. L. Rev. 495 (1923); Hudson, *The Turntable Cases in the Federal Courts*, 36 Harv. L. Rev. 826 (1923); Noel, *The Attractive Nuisance Doctrine in Tennessee*, 21 Tenn. L. Rev. 658 (1951); Wilson, *Limitations on the Attractive Nuisance Doctrine*, 1 N.C. L. Rev. 162 (1923); Harper & James, 2 The Law of Torts 1447 *et seq.*, § 27.5 (1956).

■ Considering the circumstances of this case we believe that plaintiffs were not obstinate and, consequently, the award of attorney's fees shall be eliminated.

For the reasons stated in this opinion the judgment rendered in this case by the Superior Court, Ponce Part, on

December 8, 1961 will be modified so as to eliminate the fees imposed on plaintiffs, and as modified, it will be affirmed.